**Thomas CECOLA, Appellant,**

v.

**Gerald RULEY, Appellee.**

**No. 06-98-00142-CV.**

Court of Appeals of Texas, Texarkana.

Submitted Oct. 7, 1999.

Decided Feb. 16, 2000.

---

Bailey C. Moseley, Moseley and Davis, Associates, Marshall, for appellant.

Dean Searle, Marshall, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

**OPINION**

Opinion by Justice GRANT.

Gerald Ruley sued under the Declaratory Judgments Act[1] for the court to declare that an easement exists across a certain piece of property or, in the alternative, to order the property partitioned in kind. Thomas Cecola denied that any easement existed and countersued for a partition by sale. After a bench trial, the trial court ordered that Ruley had an easement across the property, ordered that the property be partitioned in kind, and awarded him attorney's fees.

On appeal, Cecola contends (1) that the trial court erred in construing the Cecolas' divorce decree as granting an express easement, (2) that the trial court erred in determining that there is an easement of necessity, (3) that the trial court erred in ordering the land partitioned in kind and not by sale, and (4) that the trial court abused its discretion in awarding Ruley attorney's fees.

On May 4, 1988, Thomas and Starla Cecola bought an 8.19–acre landlocked parcel of land during their marriage. This parcel was bought with community funds and was community property. On May 20, 1988, the Cecolas purchased an .257–acre strip of land, measuring 40 feet wide by 280 feet long, which connected the larger parcel of land with a roadway. This second parcel of land was purchased with Thomas Cecola's separate funds, but was titled in both Thomas's and Starla's names. When the Cecolas divorced, the trial court stated in the divorce decree that the second, smaller tract was separate property, with Thomas and Starla each owning half. Neither Thomas nor Starla objected to the trial court's characterization of the Cecola strip, and the divorce decree was final at the time of this trial. Thus, the second piece of land was separate property, with Thomas and Starla each owning a one-half undivided interest.

The Cecolas divorced in 1993. In dividing the estate, the trial court awarded Starla Cecola the 8.19–acre tract of land as her separate property. The trial court then "confirmed" that Thomas Cecola and Starla Cecola each owned fifty percent of the .257–acre parcel as their separate property. In confirming this separate

1. TEX. CIV. PRAC. & REM.CODE ANN. § 37.001, *et* *seq.* (Vernon 1997).

property, the trial court utilized the term *easement* as describing the smaller tract.

After the divorce, Starla Cecola sold the 8.19–acre tract and her fifty percent undivided interest in the .257–acre tract to Gerald Ruley. Hereafter, the larger 8.19–acre tract will be referred to as the "Ruley tract," and the smaller .257–acre tract will be referred to as the "Cecola strip."

Sometime during the divorce proceedings, Cecola placed a railroad boxcar across the roadway on the Cecola strip, which completely blocked the roadway. After Ruley bought the property, he filed a motion for declaratory judgment alleging that the divorce decree granted him an express easement over the Cecola strip, that there was an implied easement of necessity over the Cecola strip, or that the Cecola strip should be partitioned in kind. Cecola filed a counterpetition requesting that the Cecola strip be partitioned by sale.

After a bench trial, the court rendered a declaratory judgment 1) that Ruley had an easement across the Cecola strip, 2) permanently enjoining Cecola from obstructing Ruley's use of the easement across the Cecola strip, 3) ordering that the Cecola strip be partitioned in kind, and 4) awarding Ruley attorney's fees.

*Express Easement*

 In his first point of error, Cecola contends that the trial court erred in construing the divorce decree as granting an express easement. An easement is defined as "a right of use over the property of *another*." (Emphasis added.)[2] Under the merger doctrine, if an easement exists and then the owner of that easement acquires a greater estate, the two estates merge into the greater of the two and the lesser is extinguished.[3] One who owns fee simple title no longer needs an easement

across his own property, since the fee simple gives him the right to use all of the property. The merger doctrine has been accepted by Texas courts.[4] As stated by the Texas Supreme Court, "The principle is elementary that, to constitute an easement, the dominant and the servient estates must be held by different owners; and when the owner of an estate enjoys an easement over another, and acquires title to the latter, the easement is thereby extinguished."[5]

This Court is not aware if any easement existed that belonged to the Ruley tract before the Cecolas purchased a fee simple in the Cecola strip. But, nevertheless, any easement that might have existed over what became the Cecola strip before the purchase by the Cecolas was extinguished by the merger doctrine when it was purchased. Therefore, at the time of the Cecolas' divorce, the Ruley tract was owned as fee simple community property and the Cecola strip was owned as fee simple separate property with no easements. This characterization in the decree was not challenged and cannot be collaterally attacked at this time.

In the divorce decree, the court confirmed the status of the Cecola strip as that which it found already existed: the Cecola strip was separate property, fifty percent owned by Starla Cecola, and fifty percent owned by Thomas Cecola. The trial court had no statutory authority to change that in the decree.[6] The court was merely clarifying the status of the property as separate property. At the time of the divorce, no easement existed on the Cecola strip. The court could not confirm the existence of something that did not exist. The court also could not grant an express easement under these circumstances because of the merger doctrine.

2. BLACK'S LAW DICTIONARY 527 (7th ed.1999).

3. *Id.* at 1002.

4. *See Tirado v. Tirado,* 357 S.W.2d 468, 474 (Tex.Civ.App.-Texarkana 1962, writ dism'd).

5. *Howell v. Estes,* 71 Tex. 690, 12 S.W. 62 (1888).

6. *See Cameron v. Cameron,* 641 S.W.2d 210, 213 (Tex.1982).

■ The divorce decree should be construed to comport with the law. Under this construction, the divorce decree's classification of the Cecola strip as an "easement" was merely a misnomer, the drafter's understanding of what the tract was being used for, not as a declaration of an express easement.

Therefore, Cecola's point of error number one is sustained.

## Easement by Necessity

■ In his next point of error, Cecola contends that the trial court erred in finding that Ruley had an easement by necessity. The landowner seeking an easement by necessity over a servient estate must show the necessity of that easement in accessing his property.[7] For an easement to be necessary, the property must be landlocked.

■ The co-ownership of separate, undivided interests in land is a cotenancy. In Texas, this situation frequently results when spouses co-own separate property, as in the instant situation.[8] When Ruley bought Starla Cecola's interest in the Cecola strip, he became a cotenant with Thomas Cecola, each owning a fifty percent undivided interest in the land. As cotenants, both Ruley and Cecola have the right to possess and to use the entirety of the property, although neither has the right to possess or use any particular portion to the exclusion of the other.[9] Thus, Ruley has the right to use the Cecola strip to ingress and egress his property. Ruley has the right to occupy or use the whole of the Cecola strip for ingress and egress to the Ruley tract, so long as his actions do not block Cecola's possession and use of the same property.

Ruley has the right to possess and use the Cecola strip in its entirety. Since Ruley can reach his tract through the exercise of his fee simple undivided interest in the Cecola strip, the Ruley tract is no longer landlocked. Therefore, there is no necessity for an easement to reach the Ruley tract at this time. This, however, does not preclude a later action for easement by necessity if the Ruley tract becomes landlocked and the owner can meet the requirements for such an easement.

Cecola's point of error number two is sustained.

## Partition in Kind vs. Partition by Sale

■ In his next point of error, Cecola contends that the evidence was legally and factually insufficient to support a partition in kind. Texas Rule of Civil Procedure 770 governs when land should be partitioned in kind. The rule states, "Should the court be of the opinion that a fair and equitable division of the real estate, or any part thereof, cannot be made, it shall order a sale of so much as is incapable of partition. . . ."[10] Whether a piece of land can fairly be partitioned in kind is a question of fact for the court or jury to decide.[11] The law favors partition in kind over partition by sale.[12] Therefore, at trial the burden of proof falls on the party opposing partitioning in kind and seeking a partition by sale.[13] Because Ce-

7. *Scott v. Cannon*, 959 S.W.2d 712, 721 (Tex. App.-Austin 1998, writ denied); *see also Koonce v. J.E. Brite Estate*, 663 S.W.2d 451, 452 (Tex.1984).

8. *Walston v. Walston*, 971 S.W.2d 687, 696 (Tex.App.-Waco 1998, writ denied) (citing *Dierschke v. Central Nat'l Branch of First Nat'l Bank*, 876 S.W.2d 377, 379 (Tex.App.-Austin 1994, no writ) ("An undivided possessory interest in property is a tenancy in common.")).

9. *Willson v. Superior Oil Co.*, 274 S.W.2d 947 (Tex.Civ.App.-Texarkana 1954, writ ref'd n.r.e.).

10. Tex.R. Civ. P. 770.

11. *Rayson v. Johns*, 524 S.W.2d 380, 382 (Tex.Civ.App.-Texarkana 1975, writ ref'd n.r.e.).

12. *Henderson v. Chesley*, 273 S.W. 299, 303 (Tex.Civ.App.1925), *writ denied*, 116 Tex. 355, 292 S.W. 156 (1927).

13. *Adams v. Adams*, 205 S.W.2d 801, 803 (Tex.Civ.App.-Waco 1947, no writ).

cola opposed the partition in kind and sought a partition by sale, the burden of proof was upon him to show that an in-kind partition would not be fair.

■ When examining the legal sufficiency of the evidence to support jury findings on which the appellant had the burden of proof, the appellate court first examines the record for evidence to support the findings and ignores all evidence to the contrary.[14] If there is no evidence, the reviewing court then examines the entire record to determine if the contrary proposition is established as a matter of law.[15]

■ We will first consider the legal sufficiency of the evidence by examining the record for evidence that supports the trial court's finding that a partition in kind would be fair and equitable. Ruley testified at the trial that the land could be partitioned in kind. He did not testify, however, that such a partition in kind would be fair or equitable, just that it was possible. There was also evidence that the land could be divided into tracts of equal value. This is some evidence to support the trial court's finding. Even if it were not, under a standard that requires us to review the entire record to see if the contrary proposition is established as a matter of law, we must conclude that it was not. This point of error is overruled.

■ In challenging the factual sufficiency of the evidence to support an adverse finding on which the appellant had the burden of proof, the appellant must show that the finding was against the great weight and preponderance of the evidence.[16] In analyzing factual sufficiency, the appellate court weighs all of the evidence and sets aside an adverse finding only if it is so contrary to the overwhelming weight and preponderance of the evi-

dence as to be clearly wrong and manifestly unjust or if the great preponderance of the evidence supports its nonexistence.[17]

Cecola's point that partition in kind is unfair is based on his own expert witness's statements about the value of the land. Robert Clayton Allen testified that the primary and "highest and best" use for the Cecola strip was access to the Ruley tract. Outside of this use, the tract has very limited use due to its narrow dimensions (approximately 40 feet wide by 280 feet long). The value in the Cecola strip comes from its use of ingress and egress to the Ruley tract, which would otherwise be landlocked.

Cecola's expert testified that a small piece of land like this usually goes for a "blood ransom" due simply to its value of access. Allen testified that if sold, the value of the Cecola strip would primarily come from "holding someone hostage," i.e., Ruley, who needs the Cecola strip to access other property he owns.

■ An adjoining landowner is owed lateral and subjacent support, restraint from nuisances which might affect the property, and such other duties as may be created by law. In a partition suit, the effect on the adjoining landowner is not a consideration. The only parties concerned are those whose real estate is being partitioned. In the present case, the relevance of the testimony concerning the adjoining property was based on the expert testimony that the primary value of the strip of land in question was for ingress and egress to the adjoining tract of land.

■ This suit is difficult because it involves the partitioning of a narrow strip

---

14. *Sterner v. Marathon Oil Co.,* 767 S.W.2d 686, 690 (Tex.1989).

15. *Id.*

16. *Croucher v. Croucher,* 660 S.W.2d 55, 58 (Tex.1983).

17. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex. 1986).

of land. However, the same principles of law apply to this partition as would any other partitioning of land. The language in Texas Rule of Civil Procedure 770 requiring a showing that the land is incapable of partition in kind does not mean incapable in a physical sense. Land could be divided into microscopic fractional pieces, but the court must look to determine if a partition in kind would be impracticable, given the small size of some interests, whether the divided interest would have an equal interest relevant to its percentage of the whole, and whether the value of the share of each would not be materially less than his share of the money equivalent that would be obtained for the whole.

If the property can be divided in kind without materially impairing its value, a sale will not be ordered, but when dividing the land into parcels causes its value to be substantially less than its value when whole, the rights of the owners are substantially prejudiced. Substantial economic loss is one of the significant factors that would warrant a sale in lieu of a partition in kind.[18] A Persian rug divided into halves and separated would render the two halves of little or no value. Such a partition could not be considered fair and equitable. The same principle is applicable to land. At one point, the trial court expressed a concern as to whether the property could be divided into parts of equal value. This is a proper concern and another significant factor in determining whether a partition could be fair and equitable, but even if the two parts are divided into equal value, if the value as a part of the larger tract has been greatly diminished, this also should be considered in determining whether or not a division in kind would be fair and equitable.

In the present case, the only testimony concerning the value of the property came from Robert Clayton Allen, the expert for Cecola, whose testimony included the following:

Q. Can you conceive of any possible way that this could be partitioned in kind without substantial detriment to either the tract as a whole or one of the parties that would own the property?

A. Well, I have considered it if you split the property into two parts lengthwise, along the 280 feet, there is going to be one winner and one loser. If you tried to partition it front to back, you would still have to retain some type of easement across the front part, therefore destroy the value of that. So, it would be extremely difficult to partition this property in kind and come out with two economically viable units.

Q. Do you believe it is capable or incapable of being divided in kind?

A. It is physically possible. It is not economically feasible to do so.

. . . .

Q. Okay, what about Dr. Cecola on his half interest to the property?

A. He would wind up with a piece of property that would be for all practical intents and purposes would not be sellable [sic].

Q. Okay.

A. At some point, I guess somebody would buy it as an adjoining land owner or something, but the general public would not have any interest in a tract like that.

Q. Standing along [sic] would it have any value to it?

A. No.

. . . .

THE WITNESS: You are going to hurt the value of both of them, substantially.

THE COURT: Okay. That's right.

---

18. In *Adams,* the court was concerned that there was no direct evidence regarding how the value of the property would be affected by a partition in kind, thus acknowledging how the value of the property was affected was a factor to be considered.

THE WITNESS: Because if you have got something that has—the forty foot wide has some limited use but you got a twenty foot, you pretty well destroyed most of the use of the property.

There was no evidence contradicting the testimony of this witness on the dimensioned value of the property after a partition.

Allen's testimony was that if the land was divided along the long access, the value of the two pieces would be decreased "substantially," but he did not testify as to any dollar figures for possible values after sale. At most, Allen testified that the Cecola strip as a whole was worth $1,250 to $2,500, making each owner's fifty percent interest worth $625 to $1,250. Allen testified that if the property was divided in kind, "for all practical intents and purposes [it] would not be sellable." This testimony spoke to the remaining strip, assuming that one of the strips had been sold for ingress and egress to the larger tract. Allen also testified that it might be possible for the remaining strip to be sold to the adjoining landowner's tract along which this strip ran.

The only evidence presented at trial was that the value of the land would be substantially decreased by a partition in kind. While Cecola had the burden of overcoming the presumption in favor of partition in kind, he presented expert testimony that partition in kind was unfeasible and impractical. Ruley presented no evidence that contradicted the expert testimony on use or valuation.

We find that the trial court's determination that the land could equitably be partitioned in kind against the great weight and preponderance of the evidence. This point of error is sustained.

Until the partition in kind has been completed, it is unknown if an easement will be necessary. As stated before, necessity is a required element of an implied easement of necessity. If the Cecola strip is partitioned into two narrow strips that connect to the Ruley tract and the public road, Ruley will own one of the two strips. The Ruley tract will not then be landlocked. Because the partition has not been made, the necessity of an easement is not before us. Furthermore, at the time the easement was granted, no necessity existed because Ruley had access over the Cecola strip because he owned an undivided interest in the Cecola strip.

Accordingly, Cecola's point of error number four is sustained.

■■■■ We have determined that the declaration of an easement across the strip of property was in an error; therefore, Ruley should not have received attorney's fees on this portion of his lawsuit, because he did not prevail. The other portion of his suit sought a partition in kind. As a matter of law, a party in a partition suit is not entitled to recover attorney's fees. *O'Neil v. O'Neil,* 77 S.W.2d 554, 557 (Tex. Civ.App.-Eastland 1934, writ dism'd by agr.); *see also Barfield v. Holland,* 844 S.W.2d 759, 771 (Tex.App.-Tyler 1992, writ denied). A suit involving the partition of land, regardless of what it is entitled, is not a proper subject matter for declaratory relief under Section 37.004 of the Texas Civil Practice and Remedies Code.[19] The substantive rights of the parties in this suit are governed by the partition procedure. There is no statutory authorization for these to be awarded in a partition suit. *Green v. Doakes,* 593 S.W.2d 762 (Tex.Civ. App.-Houston [1st Dist.] 1979, no writ). Ruley was also granted an injunction barring Cecola from interfering with Ruley's use of the easement across the Cecola strip. As we have previously stated, no easement exists across the Cecola strip. Therefore, the trial court's injunction is void, since it attempts to prevent something that cannot occur. We find that the trial court failed to follow the guiding principles of law in awarding attorney's fees. This point is sustained.

**19.** Tex. Civ. Prac. & Rem.Code Ann. § 37.004.

For the reasons stated, the award of an easement to Ruley over the Cecola strip is reversed. The award of attorney's fees is reversed, and both of these matters are rendered in favor of Cecola. The order providing for a partition in kind is reversed and remanded to the trial court for another hearing on this issue.

CECOLA STRIP

RULEY TRACT

PLAT
of
An 8.19 Acre Tract
JAMES ADAMS SURVEY A-13
MADISON COUNTY, TEXAS

Deed Ref:
1. (7.08 acres) to V. D.
 McGinther Vol. 209, P. 299
2. (1.11 Acres) to W. H. Torian
 Vol. 754, Page 301, HCDR