

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-12-00032-CV
_____

BILLY H. CHAMPION, Appellant

V.

DAVID R. ROBINSON, Appellee

On Appeal from the 76th Judicial District Court
Camp County, Texas
Trial Court No. CV-11-1764

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Chief Justice Morriss
Dissenting Opinion by Justice Moseley

O P I N I O N

How will 187.09 acres of land mostly surrounded by Ferndale Lake in Camp County be partitioned, by sale or in kind? There is no question before us that would change the trial court's finding that the property is owned 83.8109 percent by appellee, David R. Robinson, 0.1490 percent by appellant, Billy H. Champion,[1] and the remainder by some eighteen other individuals, some possibly with fractional interests smaller than 1/2600ths of the whole. The trial court found that the property was not amenable to partition in kind and ordered a sale of the property. Champion[2] appeals, urging numerous points of error, but principally that the evidence is insufficient to support that judgment. The evidence addressing whether the property is subject to partition in kind does not include any expert testimony and is the principal focus of this opinion.

We affirm the trial court's judgment, because (1) sufficient evidence supports the finding that the property was incapable of partition in kind, (2) sufficient evidence supports the trial court's rejection of fraud, and (3) Champion's other issues do not demonstrate any reversible error.

The property in question had been originally purchased by James Champion in 1911. James and his wife Lizzie, both of whom died intestate, had eight children, including Willie

---

[1]Champion has argued on behalf of the heirs of James Champion in his brief. While a party may prosecute or defend his or her own suit pro se, a pro se appellant may not represent others. *See* TEX. R. CIV. P. 7; TEX. GOV'T CODE ANN. § 81.102(a) (West 2005); TEX. PENAL CODE ANN. § 38.123 (West 2011); *Crain v. The Unauthorized Practice of Law Comm. of the Sup. Ct. of Tex.*, 11 S.W.3d 328, 332–34 (Tex. App.—Houston [1st Dist.] 1999, pet. denied). Although the caption of the notice of appeal references "James Champion Heirs," the text of the notice of appeal claims an appeal for only Billy H. Champion. Only Champion signed the notice of appeal. Thus, Billy H. Champion is the only appellant in this case.

[2]Any reference to "Champion" throughout this opinion refers to appellant, Billy H. Champion; others are identified by their first names.

Champion and Ecotrell Champion. Willie was married twice. Willie and his first wife, Fannie Bell Watson Champion, had three children, including James Champion, Jr. James, Jr. and his wife, Kathryne, both died intestate and had fourteen children including Appellant, Champion. Willie and his second wife, Esther Cummings, had three children.

In the 1970s, Lela Ann Shaw, a daughter of Ecotrell, obtained powers of attorney from several, but not all, of the descendents of James. Shaw testified that, because she paid the taxes, she believed the property belonged to her. Shaw then transferred the property to a relative[3] who transferred the property back to Shaw. Shaw later transferred the property to Wanda Wagner who then transferred the property back to Shaw. In 2004, Shaw transferred the property to her company, J&L Diversified Business Services, Inc., which used the property as collateral for a loan. J&L, though, did not own the property in its entirety. Numerous family members of Shaw, including Champion, still had undivided interests in the property. The J&L loan was foreclosed, and that interest in the property was purchased by Lloyd Gillespie. In 2011, Robinson purchased, by special warranty deed, his interest in the property from Gillespie.

Robinson brought a lawsuit against the other property owners seeking a partition by sale. At trial, Robinson testified that he owned 83.8109 percent of the property and that Champion owned 0.1490 percent.[4] Robinson admitted that he purchased the property with knowledge that

---

[3]This "straw man" relative was Virlee Shaw, but any further reference to Shaw will continue to refer to Lela Ann Shaw.

[4]This calculation presumes that none of the bequests to James' children lapsed or that the Anti-lapse Statute prevents such lapse. *See* TEX. PROB. CODE ANN. § 68 (West 2003) (current version to be amended effective Jan. 1, 2014). Champion has not challenged these percentages on appeal. The law is well settled that "[a] party proceeding pro se must comply with all applicable procedural rules" and is held to the same standards as a licensed attorney. *Weaver*

3

there was a "cloud" on the title but testified he did not worry because he was given a "warranty deed." Robinson testified that the property, which was mostly surrounded by Ferndale Lake, had a single access location and could not be partitioned. According to Robinson, the property had only fourteen acres of valuable lake front property, and the remainder of the property consisted of oil fields and swamps. Given the small percentages of some of the owners, Robinson testified it would be impossible to partition the property.

The trial court rendered judgment awarding Robinson 84.1087 percent interest, awarding Champion 0.1490 percent interest, and ordering a partition by sale. Champion timely filed a post-judgment motion titled "motion to vacate" in which he asked the trial court to reconsider its judgment on the basis that the evidence was factually insufficient to establish that the property was incapable of partition.

Champion has appealed urging six issues. Champion's first four issues raise, in essence,[5] legal and factual sufficiency challenges to the evidence, including a challenge to the trial court's order of a partition by sale. Champion alternatively argues that the evidence is legally and factually insufficient to support the trial court's implied rejection that Shaw committed fraud or fraudulent inducement—an issue not pled, but which may have been tried by consent. Champion also argues that the trial court erred in denying his motion for continuance, that he received

_v. E-Z Mart Stores, Inc._, 942 S.W.2d 167, 169 (Tex. App.—Texarkana 1997, no pet.). Ownership has not been assigned for our review.

[5]We must liberally construe issues and must address them on the merits if we can discern their substance. _Perry v. Cohen_, 272 S.W.3d 585, 588 (Tex. 2008) ("we liberally construe issues presented to obtain a just, fair, and equitable adjudication of the rights of the litigants") (quoting _El Paso Natural Gas Co. v. Minco Oil & Gas, Inc._, 8 S.W.3d 309, 316 (Tex. 1999)).

4

inadequate notice of the trial setting,[6] that the trial court erred in admitting the power of attorney, that he never waived his right to a jury trial, that the trial court erred in failing to hold a "due process" hearing on a 1979 heirship affidavit, and that the attorney ad litem rendered ineffective assistance of counsel and committed ethics violations.

*(1)*     *Sufficient Evidence Supports the Finding that the Property Was Incapable of Partition in Kind*

Champion argues that the trial court erred in granting a partition by sale instead of a partition in kind. Champion says he favors a partition in kind. Robinson argues the property cannot be partitioned in kind. Champion cites the standards for legal and factual sufficiency and requests a new trial.

Partition of property is provided for in the Texas Rules of Civil Procedure. *See* TEX. R. CIV. P. 756–71. Texas law "favors partition in kind over partition by sale." *Cecola v. Ruley*, 12 S.W.3d 848, 853 (Tex. App.—Texarkana 2000, no pet.). "Should the court be of the opinion that a fair and equitable division of the real estate, or any part thereof, cannot be made, it shall order a sale of so much as is incapable of partition . . . ." TEX. R. CIV. P. 770. This Court has explained that, although the Rule seems to provide that the property must be "incapable" of partition in kind, the Rule "does not mean incapable in a physical sense." *Cecola*, 12 S.W.3d at 855. Our inquiry is focused on whether partition in kind is "fair and equitable," which includes whether

---

[6]Champion argues he received notice only that a preliminary hearing was to be held. Unlike most proceedings, a partition cause of action has two final appealable judgments. *See Griffin v. Wolfe*, 610 S.W.2d 466 (Tex. 1980). The first judgment, often characterized as preliminary, determines "the interest of each of the joint owners or claimants, all questions of law affecting the title, and appoints commissioners and gives them appropriate directions." *Ellis v. First City Nat'l Bank*, 864 S.W.2d 555, 557 (Tex. App.—Tyler 1993, no writ). The record does not support Champion's claim that he received inadequate notice.

"property can be divided in kind without materially impairing its value." *Id.* The party seeking partition by sale bears the burden of proving a partition in kind would not be fair and equitable. *Id.* at 853–54.

Robinson directs this Court to a number of facts he claims support a partition by sale: (a) there is "a single dirt road to the property"; (b) the property contains geographically diverse features including lake frontage, oil wells, timber, bottomland, and swamp land; (c) there are multiple undivided interests, including some very small interests; and (d) "the costs of attempting to carve out these small interest tracts." *Id.* at 853. Robinson argues we must defer to the trial court's findings of historical fact.

The evidence is legally insufficient if there is a complete absence of evidence establishing a vital fact, the only evidence offered to prove a vital fact cannot be considered due to a rule of law or evidence, there is less than a scintilla of evidence to prove the vital fact, or the opposite of the vital fact is conclusively established. *Jelinek v. Casas*, 328 S.W.3d 526, 532 (Tex. 2010). More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997). "Less than a scintilla of evidence exists when the evidence is 'so weak as to do no more than create a mere surmise or suspicion' of a fact." *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003). In a legal sufficiency analysis, we credit favorable evidence if a reasonable fact-finder could and disregard contrary evidence unless a reasonable fact-finder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005).

6

When reviewing a factual sufficiency challenge, we examine the entire record, considering the evidence in favor of and contrary to the challenged finding, and set aside the jury's verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001); *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986). When the party without the burden of proof on a fact issue complains the evidence is factually insufficient, the complaining party must show the credible evidence supporting the finding is too weak or that the finding is against the great weight and preponderance of the credible evidence contrary to the finding. *Clayton v. Wisener*, 190 S.W.3d 685, 692 (Tex. App.—Tyler 2005, no pet.); *see Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965).

At trial and on appeal, Robinson has emphasized the lack of roads. Robinson testified the property had only a single, private road, which he described as a "trail used by the oil and gas companies."[7] In *Cecola*, this Court considered the lack of evidence supporting common law easements in affirming a partition by sale. *Cecola*, 12 S.W.3d at 852. Since our opinion in *Cecola*, the Texas Property Code has been amended to provide a statutory right to an express easement when property is partitioned. *See* TEX. PROP. CODE ANN. § 23.006 (West Supp. 2012) (added 2001). Thus, the fact that the property has only a single road does not require a conclusion that the tract is incapable of partition.

---

[7]On appeal, Robinson argues this road is a public road. Robinson attempts to attach documents and pictures to his brief in support of this argument. We cannot consider documents, that are not part of the record, attached as appendices to briefs. *Paselk v. Rabun*, 293 S.W.3d 600, 613 (Tex. App.—Texarkana 2009, pet. denied); *WorldPeace v. Comm'n for Lawyer Discipline*, 183 S.W.3d 451, 465 n.23 (Tex. App.—Houston [14th Dist.] 2005, pet. denied). The appellate record does not contain any evidence that a public road exists on this property.

7

*Cecola* is also distinguishable due to the size and peculiar shape of the property in dispute. In *Cecola*, the property was a ".257-acre strip of land, measuring 40 feet wide by 280 feet long," owned by two individuals in equal shares. *Cecola*, 12 S.W.3d at 853. The property in dispute here consists of 187.09 acres, owned by numerous individuals in varying proportions. Because the size of the property and the fractional interests owned in it have a distinct effect on whether property can be partitioned in kind, this fact makes *Cecola* largely distinguishable.

Another distinguishing feature between this case and *Cecola* is the lack of expert testimony in this case. In *Cecola*, the record contained expert testimony that partitioning would materially impair the narrow lot's value. *Id.* at 854. The record in this case does not contain any such testimony. The question is whether that evidentiary deficiency is fatal.

Robinson testified as a lay witness, not an expert. The record contains no request that Robinson be certified as an expert and contains no evidence that Robinson has any qualifications to testify as an expert.[8] While lay persons may testify concerning the value of property they own,[9] Robinson's testimony goes beyond that. When asked whether "you could possibly try to divide that into all the little pieces . . . ," Robinson responded, "I can't see a way." Robinson also testified that it would be expensive to partition the property. Normally, whether property can be partitioned in kind and the cost of such a partition are matters outside the experience of the average lay person. *Lopez-Juarez v. Kelly*, 348 S.W.3d 10, 19 (Tex. App.—Texarkana 2011,

---

[8]Robinson responded in the affirmative when asked "[O]ne of the things you do for a living is buy and sell real estate" and later testified, "I buy and sell land all the time."

[9]Under certain conditions, a property owner can testify to the market value of his or her own property. *Porras v. Craig*, 675 S.W.2d 503, 504 (Tex. 1984).

pet. denied) (discussing requirements of lay opinions).  When expert testimony is required, lay evidence cannot substitute for it.  *City of Keller*, 168 S.W.3d at 812.  Robinson's lay opinion that the property could not be partitioned is not expert testimony.

The property also hosts oil and gas activities.  Although Gillespie reserved the mineral estate in the special warranty deed transferring the property to Robinson, the record does not contain evidence concerning whether the mineral estate had been previously severed.  Robinson testified he did not know who owned the mineral estate.  Assuming the mineral estate had not been previously severed from the surface estate, Champion would have an interest in the mineral estate.  Regardless, it is presumed, in the absence of proof to the contrary, that minerals are equally distributed, and a partition in kind will not result in an inequitable distribution of the mineral estate.  *Gilbreath v. Douglas*, 388 S.W.2d 279, 283 (Tex. Civ. App.—Amarillo 1965, writ ref'd n.r.e.).  The record does not contain any evidence that partition would result in an inequitable distribution of the mineral estate.

The evidence presented in support of the trial court's judgment is Robinson's testimony that the 187.09 acres are geographically diverse, there are multiple interest holders, and some of the lots would be "itty-bitty."[10]

We believe that the diminutive size of the smallest shares is particularly telling here.  Eleven named individuals own fractional interests of less than 15/100ths of a percentage point, equating to a bit over a quarter of an acre each on a homogenous tract.  To further complicate the

---

[10]There is no evidence concerning the size of the lots.  We note that 0.1490 percent of 187.09 acres results in approximately a quarter acre.  Since the land apparently has differing values, a larger lot of less valuable land could be partitioned.

9

situation, one of those so-called quarter-acre shares is itself to be subdivided, likely among four or more individuals. Specifically, one interest of 0.1489 percent is listed in the amended judgment of the trial court as being owned by Marilyn J. Hill, Kathryn Yvonne Champion McDonald, "and other children of Willie James Champion." Our review of the record does not indicate the number of the "other children," but the use of the plural would indicate that this share would be shared by at least four people, the two named individuals and at least two unspecified "children." If that is true, at the very largest, the shares of those "children" would be 0.037225 percent each, equating to a lot size of less than 7/100ths of an acre, if the land were relatively homogenous.[11] If the two named owners split the share equally, and there are no other owners, each share would be 0.07445 percent, equating to less than 14/100ths of an acre.

While, expert testimony is usually needed to establish that a tract cannot feasibly be divided in kind, we believe such is not needed in situations such as this, where rural, varied land is owned in such small interests that the fact-finder is justified in concluding, without the benefit of expert testimony, that an in-kind division is simply not workable.[12]

We are persuaded by two memorandum opinions from our sister court in Austin. *See Wheeler v. Phillips*, No. 03-10-00221-CV, 2011 Tex. App. LEXIS 7402, at \*\*24–26 (Tex.

---

[11]We do not suggest that partition in kind would be accomplished by simply dividing 187.09 acres into the fractional ownership interests, without consideration of the relative values of the resulting parcels. Depending on how a partition were accomplished—because values should be considered—a resulting parcel could be larger or smaller than such a mechanical division would produce.

[12]The dissenting opinion posits that, without evidence of land value, the land in question might be as valuable as realty in Manhattan or as worthless as a parcel in the Sahara Desert. While in the abstract that might be true, here, the evidence shows this land to be rural Camp County lowland. We believe that, even without explicit value evidence, the trial court is authorized to recognize the reality that this case is about land that cannot be compared to expensive urban commercial property.

App.—Austin Sept. 7, 2011, no pet.) (mem. op.) (varied 82.201 acres in Bastrop County; share equates to less than 57/100ths of acre); *Taylor v. Hill*, No. 03-03-00540-CV, 2004 Tex. App. LEXIS 5747, at *1 (Austin July 1, 2004, no pet.) (mem. op.) (varied 100 acres in Lee County; share equates to about 13/100ths of acre). The smallest fractional share involved here—7/100ths of an acre—is much less than either of the interests in those Austin cases.

We conclude there is more than a scintilla of evidence that a partition in kind would not be fair and equitable. Thus, the evidence is legally sufficient to support the trial court's ruling on that issue.

Moving on to our consideration of the factual sufficiency of the evidence, we are to consider whether the evidence is so weak that the trial court's conclusion that Robinson met his burden of proof is clearly wrong. Champion did not present any contrary evidence to dispute Robinson's testimony, but Robinson had the burden of proof. Certainly, the fact that a 187.09-acre property contains lake frontage, oil and gas activities, mining activities, and swamp land does not necessarily preclude partition in kind. Nor does partition in kind require equal size lots. On the other hand, much of this rural land is "swampy," some of it lies beneath the lake, and there is the evidence of numerous, quite small, individual interests in this property, which we have already detailed.

While the better practice may be to present expert testimony on the issue, and in most cases such testimony is needed, we conclude that, here, the evidence is factually sufficient to support the trial court's finding that a partition in kind would not be fair and equitable. We overrule these issues.

11

*(2)     Sufficient Evidence Supports the Trial Court's Rejection of Fraud*

Champion advances a legal sufficiency challenge alleging the trial court erred in rejecting his unpled collateral attack on Robinson's title.  Champion argues that Shaw admitted she committed fraud in obtaining the power of attorney, that Shaw forged Otis Champion's signature on the power of attorney, and that the foreclosure was fraudulent.[13]  Champion argues these wrongful acts defeat Robinson's title.

Robinson and the attorney ad litem argue that Champion lacks standing to challenge their acquisition of title through Shaw's power of attorney.  Robinson was required to establish title or interest in the land to demand partition.  *See* TEX. R. CIV. P. 756.  Assuming, without deciding, that these affirmative defenses were tried by consent[14] and, assuming further, without deciding, that Champion has standing to make this challenge, the evidence is sufficient to support the trial court's findings.

The record contains sufficient evidence to reject Champion's fraud and fraudulent inducement claims.  As noted above, Shaw testified her family members signed the power of attorney because she had paid the taxes on the property.  The record does not contain any expert

---

[13]Champion argues that the trial court impliedly ruled on fraud when he reinstated the interests of Melvin L. Champion and Maggie Lene Champion.   The record establishes these interests were reinstated by agreement.

[14]At trial, the trial court permitted the pro se defendants to present evidence on common law fraud and fraudulent inducement.  We will assume, without deciding, these issues were tried by consent.  *See* TEX. R. CIV. P. 67.  On appeal, Champion argues statutory real estate fraud.  *See* TEX. BUS. & COM. CODE ANN. § 27.01 (West 2009).  Any statutory fraud claims have not been preserved for appellate review and will not be considered.  *See* TEX. R. APP. P. 33.1.

testimony supporting the claim that the signature of Otis was forged.[15]  Although Shaw testified that the property was "illegally"[16] foreclosed, Shaw failed to explain why it was "illegal" or "bogus" other than denying that there was ever a mortgage on the property.  Shaw later admitted she had used the property as collateral.  Robinson introduced the relevant deeds, deeds of trust, and foreclosure documents.  Because the record contains more than a scintilla of evidence supporting a rejection of Champion's fraud and fraudulent inducement claims, the evidence is legally sufficient.  Further, the rejection of fraud and fraudulent inducement is not contrary to the great weight and preponderance of the evidence.  The evidence is factually sufficient to support the trial court's implied rejection of fraud and fraudulent inducement.

(3)     *Champion's Remaining Issues Fail to Demonstrate Reversible Error*

Champion also argues that the trial court erred in denying his motion for continuance, he received inadequate notice of the trial setting, the trial court erred in admitting the power of attorney, he never waived his right to a jury trial, the trial court erred in failing to hold a "due process" hearing on the 1979 heirship affidavit, and the attorney ad litem rendered ineffective assistance of counsel and committed ethics violations.  We overrule these complaints.

Because Champion's motion for continuance was not accompanied by an affidavit, we may not find an abuse of discretion.  *See* TEX. R. CIV. P. 251; *Mathew v. McCoy*, 847 S.W.2d 397, 399 (Tex. App.—Houston [14th Dist.] 1993, no writ).

---

[15]Champion argues we can compare the signature in the record with a signature attached to his brief and determine the trial court erred.  Documents attached to appellate briefs do not thereby become evidence.  Further, any such comparison would require expert testimony by a handwriting expert.

[16]Any procedural irregularities in the foreclosure have not been challenged.

Champion argues he received notice only that a preliminary hearing was to be held. Unlike most proceedings, a partition cause of action has two final appealable judgments. *See Griffin*, 610 S.W.2d 466. The first judgment, often characterized as preliminary, determines "the interest of each of the joint owners or claimants, all questions of law affecting the title, and appoints commissioners and gives them appropriate directions." *Ellis v. First City Nat'l Bank*, 864 S.W.2d 555, 557 (Tex. App.—Tyler 1993, no writ). The record does not support Champion's claim that he received inadequate notice.

Champion argues that the trial court erred by admitting the power of attorney as an ancient document.[17] Shaw testified she hired an attorney to draft the power of attorney and traveled around East Texas with a notary public to secure the signatures. Even if the trial court erred in admitting the power of attorney as an ancient document under Rule 803(16) of the Texas Rules of Evidence, any error was rendered harmless by Shaw's testimony. *Volkswagen of Am., Inc. v. Ramirez*, 159 S.W.3d 897, 907 (Tex. 2004) (any error in admission of evidence "is deemed harmless and is waived if the objecting party subsequently permits the same or similar evidence to be introduced without objection"). Robinson has failed to show the error probably caused the rendition of an improper verdict. *See* TEX. R. APP. P. 44.1.

Champion argues he never waived his right to a jury trial. A civil litigant can waive a jury trial by failing to make a timely written jury demand. TEX. R. CIV. P. 216 ("No jury trial shall be had in any civil suit, unless a written request for a jury trial is filed with the clerk of the

---

[17]The power of attorney may have been admissible under Rule 803(14), providing a hearsay exception for recorded documents affecting interests in property, or Rule 803(15), providing a hearsay exception for uncontested statements affecting interests in property. *See* TEX. R. EVID 803(14), (15). Because Shaw's testimony verifying the power of attorney rendered any error harmless, we leave this issue for another day.

14

court a reasonable time before the date set for trial of the cause on the nonjury docket, but not less than thirty days in advance."). The record does not contain a timely jury demand.

Champion claims that the trial court was obligated to hold a due process hearing on the 1979 heirship affidavit. Champion has failed to cite any authority that such a hearing was required. The law is well settled that "[a] party proceeding pro se must comply with all applicable procedural rules" and is held to the same standards as a licensed attorney. *Weaver*, 942 S.W.2d at 169. We review and evaluate pro se pleadings with liberality and patience, but otherwise apply the same standards applicable to pleadings drafted by lawyers. *Foster v. Williams*, 74 S.W.3d 200, 202 n.1 (Tex. App.—Texarkana 2002, pet. denied). We are not responsible for conducting a party's legal research. *See Canton-Carter v. Baylor College of Med.*, 271 S.W.3d 928, 932 (Tex. App.—Houston [14th Dist.] 2008, no pet.). This issue has been inadequately briefed and, thus will be overruled. TEX. R. APP. P. 38.1(h); *see Bolling v. Farmers Branch Indep. Sch. Dist.*, 315 S.W.3d 893, 896 (Tex. App.—Dallas 2010, no pet.).

Finally, Champion argues that the attorney ad litem rendered ineffective assistance of counsel and committed ethics violations. The ad litem argues he never represented Champion and that Champion represented himself pro se at trial. It is not necessary for us to decide whether Champion ever had an attorney-client relationship with the attorney ad litem,[18] whether the attorney ad litem's performance was deficient, or whether any ethics violations occurred. Under the fact presented here, Champion, as an indigent civil litigant, did not have a

---

[18]The attorney ad litem was appointed to represent the defendants who were served by publication. Champion, who was served by publication, filed a pro se answer and represented himself at trial.

15

constitutional right to appointed counsel.[19]  Champion has failed to provide this Court with any authority supporting his argument that the alleged ineffective assistance of counsel was reversible error or that the alleged ethics violations are reversible error.  This issue has been inadequately briefed and is overruled.  TEX. R. APP. P. 38.1(h).

Legally and factually sufficient evidence supported the trial court's finding that the property was incapable of partition in kind.  Sufficient evidence supports the trial court's rejection of fraud.  Champion's other issues do not demonstrate any reversible error.  For the reasons stated, we affirm the trial court's judgment.


Josh R. Morriss, III
Chief Justice

DISSENTING OPINION

The bench trial of this case appears to have been no easy task for the trial court.  The fact that a number of joint owners of the property sought to be partitioned appeared pro se and participated in the trial (most of whom seemed to have had very little familiarity with procedures followed in court or with the Texas Rules of Evidence) give the feeling that the trial court did a yeoman's job in trying to prevent the trial from resembling the activities often observed in a three-ring circus.

---

[19]While there is a constitutional right to effective assistance of counsel in criminal cases involving imprisonment, *see Strickland v. Washington*, 466 U.S. 668 (1984), this is a civil case.  In most civil cases, an indigent civil litigant does not have a constitutional right to appointed counsel.  *See Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 26 (1981) (due process did not require appointment of counsel for indigent civil litigant in parental rights termination case); *cf. Turner v. Rogers*, 131 S.Ct. 2507, 2520 (2011) (considering lack of counsel in concluding civil contempt incarceration violated Due Process Clause); *Scott v. Illinois*, 440 U.S. 367, 370 (1979) (right to counsel in criminal cases depends on whether there is "actual deprivation of a person's liberty").

At the conclusion of the trial, a judgment was entered that purported to determine the interests of the parties,[20] in which the trial court determined that "[a]fter consideration of the interests owned by the multiple parties and the limited quantity of acreages owned by multiple Defendants being partitioned, the Court finds that the property is not susceptible to a fair and equitable partition in kind." The judgment purported to appoint a receiver[21] to sell the property.

This dissent centers solely on the issue of whether there was sufficient evidence to support a finding that the real property the subject of the suit for partition was not capable of partition in kind and, therefore, was required to be partitioned by sale.

It has long been the law in Texas that partition in kind is favored over partition by sale. *Henderson v. Chesley*, 273 S.W. 299, 303 (Tex. Civ. App. 1925). "The law does not favor compelling an owner to sell his property against his will, but prefers a division in kind when such can be fairly and equitably made." *Rayson v. Johns*, 524 S.W.2d 380, 382 (Tex. Civ. App.—Texarkana 1975, writ ref'd n.r.e.). This preference was incorporated in Rule 770 of the Texas Rules of Civil Procedure, which provides, "[s]hould the court be of the opinion that a fair and equitable division of the real estate, or any part thereof, cannot be made, it shall order a sale of so much as is incapable of partition . . . ." TEX. R. CIV. P. 770. However, even though the preference of partition in kind existed for many years, before this Court handed down a ruling in

---

[20]One cannot help but notice that although some of the conveyances introduced by Robinson purported to reserve portions of the mineral estate of the tract, the judgment entered makes no mention of the reservation of the mineral estate and the owners of those reserved mineral interests do not appear to be parties to the lawsuit. Although the appellant does not raise the issue of the failure to join some of the possessory interest holders, "An attempted partition of the whole of a tract of land, where all the owners are not joined as parties, is not binding even on those who are parties." *Mustang Drilling v. Cobb*, 815 S.W.2d 774, 777 (Tex. App.—Texarkana 1991, writ denied).

[21]No bond was set for the receiver as required by Rule 695a of the Texas Rules of Civil Procedure. TEX. R. CIV. P. 695a. No complaint was raised by Champion regarding this failure.

2000, there were no reported cases in Texas which set out the standards by which the trial courts were to measure the "partionability" of a tract of land. That yardstick or measure was first set out by this ourt in *Cecola v. Ruley*, 12 S.W.3d 848, 853 (Tex. App.—Texarkana 2000, no pet.). In *Cecola*, the inquiry on review focused on whether "property can be divided in kind without materially impairing its value." *Id*. at 855. In other words, the party seeking partition by sale must show that the value of the property would be materially impaired if there were a partition in kind.

Robinson, acting as his sole witness, was asked, "[D]o you believe there's any fair, reasonable way to carve out this property in as little interest to give everybody an equal share of the waterfront, the well area, and the bottoms?" Robinson testified that he did not believe that to be possible. He also pointed out that there were distinct differences in the property, some of which was inundated by a lake, some of which was in a creek area, and some of which had well sites for oil and gas drilling. In addition, he pointed out that there was "a single dirt road to the property." The most persuasive of the arguments that Robinson makes on appeal involve the fact that there are multiple, undivided interests, including some interests of small size and complains of "the costs of attempting to carve out these small interest tracts." Robinson argues we must defer to the trial court's findings of historical fact.

The primary problem with Robinson's arguments is that the very limited evidence he presented at trial simply does not, for the most part, support his argument. Making certain that each distributive share after a partition shares a portion of each liability or each asset a property possesses (e.g., each getting a part of the roadway, lakefront, or inundated portion of the

18

property) is not the aim of the partition; rather, the goal is to make certain that each joint owner of the property is set aside a piece of the property which has a value which reflects his proportionate share of the value of the property. That is why the Rules governing the role of the commissioners of partition require the commissioners to set out their opinion of the value of each tract. TEX. R. CIV. P. 769(c).

To the question, "You anticipate that would be a pretty expensive cost to start carving that property up?" Robinson testified in the affirmative. However, there was no evidence of the anticipated cost of dividing the tract up and the term "pretty expensive" is extraordinarily nebulous. One can observe that paying a receiver fee and the other attendant costs of a sale of the property could likewise be "pretty expensive" in the eyes of Robinson. That lack of certainty leaves the trier of fact with no real evidence to weigh the desirability of partition in kind against partition by sale.

Robinson also mentions the presence of timber on the tract, something that could have a tremendous impact on the value of the property (or portions of it); even so, he presents us with nothing concerning the value of the timber or its concentrations on one part of the tract versus another. These are things (along with the topography of the property, its access to public roads, and other influences on the value of real estate) that commissioners of partition would be required to weigh in determining a fair and equitable partition in kind. Although the majority

19

assumes that very small portions of the property would be valueless, there was absolutely no evidence upon which we can base that assumption.[22]

The majority opinion does scholarly work in defining the standards for determining whether there is sufficient evidence upon which to base a judgment, but then (for all practical purposes) ignores the very standards that are described.

The important thing that the *Cecola* case taught us was to focus on the impact of a partition in kind on the value of the property as a whole as a means of determining whether a partition by sale was necessary.  Here, the evidence zeroed in on the potential size of the tracts, the difference in topography and improvements, and the availability of access in its current form.  No evidence was introduced as to the value of the property in any state:  as an intact parcel or divided into shares.  Other than to describe partition in kind as being "expensive" in the eyes of the proponent of partition by sale, there is nothing shown as to the costs that would be incurred in a partition in kind.  The majority opinion assumes that a partition in kind of the property would be based upon acreages and not proportions of value, something that  is prohibited to be done in a partition in kind.  *See* TEX. R. CIV. P. 768.

The evidence presented by Robinson is so weak that the trial court's conclusion that he met his burden of proof is clearly wrong.  While Champion did not present contrary evidence to dispute Robinson's testimony, it was never Champion's burden to show that it could be effectively partitioned in kind.  Rather, Robinson had the burden of proving that it could not.

---

[22]There is evidence that one of the owners had secured a $420,000.00 note with her interest in the land and also evidence that the property was sold for over $200,000.00.  Although there is evidence that Ferndale Lake (an apparently sizeable body of water) inundates at least a part of the property, there is neither evidence as to precisely how much is inundated, nor the enhancement in value, if any, which the presence of the lake would cause.

The Texas Supreme Court has instructed, "Undisputed evidence and conclusive evidence are not the same -- undisputed evidence may or may not be conclusive, and conclusive evidence may or may not be undisputed." *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005). The fact that a 187.09-acre property contains lake frontage, oil and gas activities, mining activities, and swamp land does not absolutely preclude partition in kind. Partition in kind does not require equal size lots. With no more evidence concerning the values of the land that was presented at trial, the land could be as valuable as if it were in downtown Manhattan or as worthless as if it were in the middle of the Sahara Desert. The size of the lots set aside to the various owners could depend on the value of the land. Further, lots less than an acre in size are not microscopic, and there is no evidence that lots of that size would lack economic value in this area of Camp County. There is simply no evidence that a partition in kind would materially decrease the overall value of the property.

Champion's right to retain his land can only be overcome by sufficient evidence that the property is incapable of being partitioned in kind. Robinson had the burden to prove, by a preponderance of the evidence, that partition in kind would not be fair and equitable. Although Robinson presented some evidence, the evidence was so very weak that the trial court's conclusion is clearly wrong.

The evidence is legally insufficient to support the trial court's implied finding[23] that a partition in kind cannot be made in a fair and equitable manner. We should reverse the judgment of the trial court finding that the property is not capable of partition in kind.

I respectfully dissent.

Bailey C. Moseley
Justice

Date Submitted:     October 23, 2012
Date Decided:       December 19, 2012

---

[23]Since Champion did not request findings of fact, we imply any findings necessary to support the trial court's judgment. *See In re Naylor*, 160 S.W.3d 292, 294 (Tex. App.—Texarkana 2005, pet. denied).

22