**Affirmed and Memorandum Opinion filed March 10, 2015.**



In The

# Fourteenth Court of Appeals

### NO. 14-13-00524-CV

**ESTATE LAND COMPANY, AARON WIESE, AND KAMAL BANANI (BANNAN), Appellants**

**V.**

**ANTHONY WIESE, Appellee**

**On Appeal from the 151st District Court**
**Harris County, Texas**
**Trial Court Cause No. 2009-00136**

## MEMORANDUM OPINION

In eleven issues, appellants, Estate Land Company, Aaron Wiese, and Kamal Banani, complain the trial court lacked jurisdiction to sign a final judgment, and that there is insufficient evidence to support the judgment. We affirm.

### I. BACKGROUND

In 1999, Aaron Wiese ("Aaron") and his brother, Anthony ("Tony") Wiese, purchased three properties in Houston, Texas: 812 Main Street; 110-114 Main Street; and I-10 McKee-Chapman ("McKee-Chapman"). In 2001, along with

Kamal Banani, they purchased 3302 Polk Street. The parties secured financing, and the record reflects that both Aaron and Tony were equally responsible for the entire amounts of the loans. Tony sued appellants in 2009 seeking partition of the properties and reimbursement for contributions he had made to the properties. He also requested injunctive relief regarding a lease on the property at 812 Main Street ("Pearl Lease").

At the conclusion of a bench trial, the trial court signed a judgment, found the properties were incapable of partition, and appointed a receiver to sell the properties. The court ordered that proceeds from the sale would be split among the parties as follows: 812 Main Street and McKee-Chapman split equally between Aaron and Tony; 110-114 Main Street divided 50% to Tony, 43.71% to Aaron, and 6.29% to Kamal Banani; and 3302 Polk Street divided with 80% to Estate Land Company,[1] 10% to Kamal Banani, and 10% to Tony. The trial court also concluded that the Pearl Lease was valid and enforceable, and that it gave managerial powers to Aaron until the property was sold. The trial court ordered that one-half of the net profits from the rents due and paid under the Pearl Lease would be paid quarterly to Tony until the sale of 812 Main Street occurred.[2]

The trial court signed findings of fact and conclusions of law stating that the properties were not susceptible to partition in kind; ordering the sale of the properties; and setting forth the percentages of each property owned by the parties. The trial court also signed supplemental findings of fact and conclusions of law;

---

[1] Estate Land Company is an entity wholly owned and controlled by Aaron.

[2] The trial court signed a judgment on March 12, 2013. After appellants filed a motion for new trial, the trial court signed an amended judgment. The terms of the amended judgment, signed on May 15, 2013, changed the percentages apportioned among the parties regarding 110-114 Main Street. The May 15 judgment ordered further relief relative to the Pearl Lease and equal distribution of funds in an account related to the case, payable to Aaron and Tony Wiese. References to the final judgment in this opinion are to the First Amended Final Judgment and Order of Sale signed on May 15, 2013.

these related to the Pearl Lease for the 812 Main Street building and reflected how the rental payments made pursuant to the lease would be made and how the property would be managed until the building was sold. The supplemental findings also set out the percentages of ownership for the 110-114 Main property.

## II. STANDARD OF REVIEW

In their first four issues, appellants focus largely on contentions that the final judgment is not supported by the law or the Texas Rules of Civil Procedure.[3] Appellants characterize at least some of their arguments as pertaining to subject matter jurisdiction, although it is not clear from the briefing how jurisdiction is implicated when appellants complain about asserted failures to comply with the governing rules and statutory language.

In their remaining issues, appellants attack the legal and factual sufficiency of the evidence to support the trial court's findings of fact. We review a trial court's factual findings utilizing the same standards that apply to a review of a jury's verdict. *See MBM Fin. Corp. v. Woodlands Operating Co., L.P.*, 292 S.W.3d 660, 663 (Tex. 2009) (citing *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994)). When there is a complete reporter's record, the trial court's findings are not conclusive. *See Arrellano v. State Farm Fire & Cas. Co.*, 191 S.W.3d 852, 856 (Tex. App.—Houston [14th Dist.] 2006, no pet.). The trier of fact is the sole judge of the credibility of the witnesses and the weight to be given their testimony, and we may not substitute our judgment for that of the trial court simply because we may disagree with the court's findings. *City of Houston v. Harris County Outdoor Advertising Ass'n*, 879 S.W.2d 322, 327 (Tex. App.—Houston [14th Dist.] 1994, writ denied) (citing *Herbert v. Herbert*, 754 S.W.2d 141, 142 (Tex. 1988)).

___

[3] Tex. R. Civ. P. 756–771, specifically Tex. R. Civ. P. 770.

We uphold conclusions of law if they can be supported under any legal theory supported by the evidence, and we will not reverse them unless they are erroneous as a matter of law. *Martin-Simon v. Womack*, 68 S.W.3d 793, 796 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) (citing *Waggoner v. Morrow*, 932 S.W.2d 627, 631 (Tex. App.—Houston [14th Dist.] 1996, no writ). We apply the *de novo* standard to conclusions of law. *See Zieba v. Martin*, 928 S.W.2d 782, 786 n. 3 (Tex. App.—Houston [14th Dist.] 1996, no writ).

When examining a legal-sufficiency challenge, we review the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). We credit evidence that supports the judgment if reasonable fact finders could and disregard contrary evidence unless reasonable fact finders could not. *Id*. at 827. "No evidence" or legal-insufficiency challenges may be sustained only when the record discloses one of the following situations: (a) a complete absence of evidence of a vital fact; (b) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; or (d) the evidence establishes conclusively the opposite of the vital fact. *Id*. (citing Robert W. Calvert, "No Evidence" and "Insufficient Evidence" Points of Error, 38 Tex. L. Rev. 361, 362–63 (1960)).

When reviewing a factual-sufficiency challenge, we must assess all of the evidence and may not substitute our judgment for that of the trier of fact. When the challenge is to a finding on which the prevailing party had the burden of proof, we may reverse the judgment only if the challenged finding shocks the conscience or clearly shows bias, or if the favorable evidence is so weak as to make the judgment clearly wrong and manifestly unjust. *Dow Chemical Co. v. Francis*, 46

S.W.3d 237, 242 (Tex. 2001); *Price Pfister, Inc. v. Moore & Kimmey, Inc.*, 48 S.W.3d 341, 347 (Tex. App.—Houston [14th Dist.] 2001, pet. denied).  If the challenge is to an adverse finding, or failure to find, on which the appellant had the burden of proof, we may reverse only if the failure to find is so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and manifestly unjust.  *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003).

The construction of a deed is a question of law for the court, where the primary duty of the court is to ascertain the intent of the parties within the four corners of the deed.  *See: Altman v. Blake*, 712 S.W.2d 117, 118 (Tex. 1986).  Accordingly, review is *de novo*.  *See Hausser v. Cuellar*, 345 S.W.3d 462, 467 (Tex. App.—San Antonio 2011, pet. denied) (citing *Range Resources Corp. v. Bradshaw*, 266 S.W.3d 490, 493 (Tex. App.—Fort Worth 2008, pet. denied)).  We exercise our judgment with no deference to the trial court's decision.  *Id*. (citing *Quick v. City of Austin*, 7 S.W.3d 109, 116 (Tex. 1998)).

## III. ANALYSIS

### A.  Order of Partition and Sale

In their first issue, appellants contend that the trial court lacked jurisdiction to sign the final judgment and order of sale.  While appellants use the term "jurisdiction," we construe their argument to attack the procedure employed by the trial court.  Appellants broadly assert the final judgment must be reversed because the trial court did not follow the requirements of the Texas Rules of Civil Procedure and the Texas Property Code to determine each party's share or legal interests in the properties.

Section 23.001 of the Texas Property Code provides: "A joint owner or

5

claimant of real property or an interest in real property . . . may compel a partition of the interest or the property among the joint owners or claimants . . . ." *See* Tex. Prop. Code § 23.001 (West, Westlaw through 2013 3d C.S.). Section 23.004 of the Texas Property Code provides: "A person allotted a share of or an interest in real property in a partition action holds the property or interest in severalty under the conditions and covenants that applied to the property prior to the partition." *See* Tex. Prop. Code § 23.004 (West, Westlaw through 2013 3d C.S.).

When presented with a petition for partition of real estate, the court "shall determine the share or interest of each of the joint owners or claimants in the real estate sought to be divided, and all questions of law or equity affecting the title to such land which may arise." *See* Tex. R. Civ. P. 760. Before signing its decree of partition, the court shall determine whether the property is susceptible of partition. *See* Tex. R. Civ. P. 761. If it is determined to be incapable of partition in kind, then the trial court must order partition by sale. *See* Tex. R. Civ. P. 770; *see also Pfeffer v. Meissner*, 286 S.W.2d 241, 246 (Tex. Civ. App.—Galveston 1955, writ ref'd n.r.e) (concluding the trial court has continuing jurisdiction to enter orders as needed in a partition action).

In its final judgment, the trial court determined that the properties were not susceptible to partition in kind and ordered sales of each property. The trial court appointed a receiver to sell the properties subject to confirmation by the court on the receiver's sworn report of the sales. The final judgment ordered the proceeds of the sales distributed among the parties, assigning percentages to each party relative to each property. Specifically, as set forth above, as to 812 Main and McKee-Chapman, the trial court ordered the proceeds divided equally between Aaron and Tony. With respect to the sale of 110-114 Main, proceeds were divided amongst Tony (50%), Aaron (43.71%), and Kamal Banani (6.29%). The division

6

of proceeds of the sale of 3302 Polk was 80% to Estate Land Company, and 10% each to Kamal Banani and Tony. In sum, the final judgment set out the percentages of each party's ownership and allocated the distribution of the proceeds. Appellants do not identify any asserted deviations from the requirements of the rules or the Property Code based on these actions. We overrule appellants' first issue.

In their second and third issues, appellants contend that the final judgment and sale are not supported by the law and evidence. These challenges focus on appellants' contention that there is a conflict between certain findings of fact and supplemental findings; therefore, according to the appellants, the final judgment is void or voidable. Finding 4 states in part:

> 812 Main is not susceptible to partition in kind. A partition in kind of 812 Main would not be fair and equitable. 812 Main cannot be partitioned in kind without materially impairing its value. 812 Main should be partitioned by sale since substantial economic loss and substantial prejudice would ensue to Tony if 812 Main is partitioned in kind.

Supplemental Finding 1(g), dealing specifically with the Pearl Lease, provides:

> The 812 Main building can be partitioned in kind in such a way that Tony Wiese's 50% interest can be protected by apportioning the payments to be received under the terms of the lease.

Finally, Supplemental Finding 1(j) states:

> The competing interests in the 812 Main Building can be balanced when the property is partitioned by sale.

We will not set aside a judgment because of conflicting findings of fact by a judge or a jury if the conflict can be reconciled. *See Morton v. Hung Nguyen*, 369 S.W.3d 659, 674 (Tex. App.—Houston [14th Dist.] 2012, *rev'd in part on other grounds*, 412 S.W.3d 506 (Tex. 2013)). We must reconcile apparent conflicts where there is any reasonable basis to do so. *Id*. (citing *Anchor, Inc. v. Laguna*

7

*Enters., Inc.*, No. 14-00-00283-CV, 2002 WL 287706, at \*4 (Tex. App.—Houston [14th Dist.] Feb. 7, 2002, pet. denied) (op. on reh'g) (citing *Bender v. S. Pac. Transp. Co.*, 600 S.W.2d 257, 260 (Tex. 1980)).

There was evidence at trial that Tony and Aaron both were equally liable on the note to secure the 812 Main property. The deed to 812 Main reflects that Aaron and Tony were tenants in common who each owned an undivided one-half interest in the property. There were no changes to the deed or note, and no documents in the chain of title altering equal ownership. In both findings, the trial court determined that Tony and Aaron each owned equal shares of 812 Main, and that Tony was entitled to received his one-half interest. The supplemental finding seeks to protect Tony's one-half interest by awarding him one-half of the payments under the Pearl Lease.

Appellants have not shown that these findings are irreconcilable. We conclude the trial court's findings relating to the partition of the 812 Main Building, as well as the division of the rental payments pursuant to the Pearl Lease until the property is sold, may be reconciled on the basis of the deed's recital of Tony's and Aaron's undivided, equal ownership of the 812 Main Building. Therefore, we will not set aside the final judgment. *See* Tex. R. Civ. P. 760; *Champion v. Robinson*, 392 S.W.3d 118, 123 (Tex. App.—Texarkana 2012, pet. denied) (concluding that trial court determines whether partition in kind is "fair and equitable," which includes whether the property can be divided in kind without materially impairing its value) (citing *Cecola v. Ruley*, 12 S.W.3d 848, 853 (Tex. App.—Texarkana, 2000, no pet.)); *see also Snow v. Donelson*, 242 S.W.3d 570, 572 (Tex. App.—Waco 2007, no pet.) (citing *Yturria v. Kimbro*, 921 S.W.2d 338, 342 (Tex. App.—Corpus Christi 1996, no writ) (holding that a trial court "applies the rules of equity in determining the broad question of how property is to be

partitioned")). We overrule appellants' second and third issues.

In their fourth issue, appellant contend that the trial court lacked jurisdiction to order one-half of "net profits" to be paid to appellee and to determine how the property would be managed until the 812 Main property was sold. Appellants challenge the part of the final judgment stating as follows:

> . . . [O]ne-half of the net profits from the rents, after reasonable expenses, including maintenance, taxes, utilities, insurance, etc. shall be paid to [Tony] on a quarterly basis until the 812 Main Building is finally sold and such transaction has closed and funded.

This portion of the order relates to the Pearl Lease at 812 Main and requires that the receiver pay Tony one-half of the net profits from the Pearl Lease rents until 812 Main is sold pursuant to the final judgment. Without reference to any authority, appellants contend that there is "no statutory authority or jurisdiction or authorizing rule permitting" the trial court to order how the property is managed or operated.

We reject this contention. Ensuring that Tony receives one-half of the Pearl Lease rents is consistent with the language of the deed, which reflects that Tony and Aaron owned the property as tenants in common. It also is consistent with the trial court's determination that Tony and Aaron owned undivided equal shares of this property, and that each should receive equal shares of the profits upon partition and sale of 812 Main. The trial court had jurisdiction to make this determination and to order a division of net profits from the rent. *See* Tex. R. Civ. P. 760; Tex. Prop. Code § 23.001, 23.004; *see Casso v. Fullerton*, No. 04-05-00905, 2006 WL 2612600 (Tex. App.—San Antonio Sept. 13, 2006, pet. denied) (mem. op.) (citing *Trevino v. Trevino*, 641 S.W.3d 166, 174 (Tex. App.—San Antonio 2001, no pet.)) (holding that cotenants are required to share income generated from the property they own).

Finally, as part of their fourth issue, appellants assert the trial court did not acquire jurisdiction over—and could not partition or order the sale of—0.164 acres of the McKee-Chapman tract. They contend that jurisdiction was lacking because the legal description in Tony's petition seeking relief as to 0.537 acres is different from the relief and legal description in the final judgment ordering partition and sale of both the 0.537-acre and 0.164-acre parcels. Appellants contend the allegations in Tony's petition limit the trial court's jurisdiction to ordering partition and sale of only the 0.537-acre parcel. Tony urges that appellants did not object to the admission of the deed into evidence at trial, and to the extent there was a variance between pleading and proof, the issue was tried by consent.

In order to preserve an issue for appellate review, the record must demonstrate the complaint was made to the trial court by timely objection, and the trial court ruled on the objection. *See* Tex. R. Civ. P. 103(a)(1); Tex. R. App. P. 33.1(a). Appellants did not object to the admission of the Trustee's Special Warranty Deed of the McKee-Chapman tract conveying to Aaron and Tony as co-tenants the 0.537-acre and 0.164-acre parcels referenced in the deed; thus, the complaint was not preserved for appellate review.

Further, to the extent appellants' argument can be construed as a complaint that Tony's pleading cannot support the relief in the final judgment, we review whether the issue was tried by express or implied consent of the parties. *See* Tex. R. Civ. P. 67; *see also Johnston v. McKinney Am., Inc.*, 9 S.W.3d 271, 281 (Tex. App.—Houston [14th Dist.] 1999, pet denied) (holding that to determine whether an issue was tried by consent, it must appear the issue was actually tried, although not pleaded).

Appellants did not object to the admission of the deed, they did not seek any instruction limiting consideration to only the 0.537-acre parcel included in Tony's

10

petition, and throughout trial, Aaron maintained he was claiming a 50% interest in the entire tract. Further, other exhibits introduced without objection contained the parties' estimation of contributions toward the purchase of and improvements on the entire McKee-Chapman tract.

We believe the issue of partition and sale of the 0.164-acre parcel was tried by consent. The party who fails to raise the lack of a pleading before submission of the case cannot later raise the pleading deficiency for the first time on appeal. *See Roark v. Stallworth Oil and Gas, Inc.*, 813 S.W.2d 492, 495 (Tex. 1991) (holding that failure of party to direct the trial court's attention to the absence of the pleadings before the trial court rendered judgment precludes appeal of the alleged deficiency); *Hartford Fire Ins. Co. v C. Springs 300, Ltd.*, 287 S.W.3d 771, 780 (Tex. App.—Houston [1st Dist.] 2009, pet denied) (concluding that where issue was raised several times during trial, with no objection, issue was tried by consent).

We overrule appellants' fourth issue.

## B.     Deeds and Tenancy-in-Common Agreements

In issues five through eleven, appellants contend there is factually and legally-insufficient evidence to support the trial court's determination of the parties' percentages of ownership in the four properties.

### 1.     812 Main and 110-114 Main

Appellants argue that the tenancy-in-common agreements are determinative of the percentages of interests owned by each party, and that the findings of fact and the percentages of interest set forth in the final judgment are erroneous because they are contrary to the percentages assigned in the agreements.

The recital in the tenancy-in-common agreement for 812 Main assigned 85%

11

to Aaron and 15% to Tony; for 110-114 Main, the recital assigned 84.28% to Aaron and 15.72% to Tony. Appellants offered these agreements into evidence in support of a contention that the percentages in each agreement control over the percentages set forth in the deeds. Aaron testified that he and Tony both signed these agreements. Tony denied his signature appeared on the agreements.

The Special Warranty Deed with Vendor's Lien as to the 812 Main property reflects Aaron and Tony, as Grantees, are "tenants in common."[4] The Warranty Deed for 110-114 Main designates Aaron and Tony, as Grantees, and reflects they are "co-tenants."[5] The deed is *prima facie* evidence of the grantee's ownership; where the interest of each grantee is not stated, a rebuttable presumption arises that each has an equal undivided interest in the property. *See In re Marriage of Murray*, 15 S.W.3d 202, 205 (Tex. App.—Texarkana 2000, no pet.) (citing *Zephyr v. Zephyr*, 679 S.W.2d 553, 556 (Tex. App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.)).

It is undisputed that neither tenancy-in-common agreement was incorporated in or referred to in the deeds; and further, the deeds themselves were not changed to reflect the percentages set out in the purported tenancy-in-common agreements. It is also undisputed that neither tenancy-in-common agreement was filed in the real property records.

Interpreting the unambiguous language of the deed precludes reference to any parol evidence, such as the tenancy-in-common agreements. *Stewman Ranch,*

---

[4] A "tenancy in common" is a tenancy by two or more person, in equal or unequal undivided shares, where each such person has an equal right to possess the whole property, but with no right of survivorship. *See Frazier v. Donovan*, 420 S.W.3d 463, 467 (Tex. App.—Tyler 2014, no pet.) (citing Black's Law Dictionary 1604 (9th Ed. 2009)).

[5] The co-ownership of separate, undivided interests in land is a cotenancy. *See Cecola v. Ruley*, 12 S.W.3d 848, 853 (Tex. App.—Texarkana 2000, no pet.).

*Inc v. Double M. Ranch, Ltd.*, 192 S.W.3d 808, 810 (Tex. App.—Eastland 2006, pet. denied). We consider the entire document under the "four corners" rule and determine the parties' intention by looking at what is stated in the deed, not what it is claimed they meant. *See T.F.W. Management, Inc. v. Westwood Shores Property*, 162 S.W.3d 564, 568 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (citing *Lenape Res. Corp. v. Tenn. Gas Pipeline Co.*, 925 S.W.2d 565, 574 (Tex. 1996)); *see also Esquivel v. Murray Guard, Inc.*, 992 S.W.2d 536, 544 (Tex. App.—Houston [14th Dist.] 1999, pet. denied). We must garner the intent from the language of the deed, as opposed to extraneous evidence. *See Hance, Scarborough, Wright, Ginsberg & Brusilow, L.L.P. v. Kincaid*, 70 S.W.3d 907, 911 (Tex. App.—Amarillo 2002, pet. denied). We may not rewrite the agreement to mean something it did not say; what the parties like or dislike about the contract "matters not." *Id*. (citing *HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 888–89 (Tex. 1998)).

Thus, unless the tenancy-in-common agreements were incorporated into the deeds to the two tracts, or filed of record in the chain of title, they may not be considered as altering the parties' ownership set forth in the deeds. "[I]t is a well settled rule of law that in the construction of written instruments, all instruments in a chain of title, when referred to in a deed . . . will be read into it." *Millican DPC Partners, L.P. v. Frank Bobbitt McGregor Trust*, 433 S.W.3d 67, 73 (Tex. App.—San Antonio 2014, pet filed) (citing *Dixon v. Amoco Prod. Co.*, 150 S.W.3d 191, 194 (Tex. App.—Tyler 2004, pet denied)). Because there is no evidence that the tenancy-in-common agreements were filed in the chain of title, we hold the terms of the agreements may not be read into the deeds.

We overrule appellants' issues five through nine.

## 2. "Sweat equity"

Appellants argue the trial court determined that Tony contributed "sweat equity" toward the properties at 812 Main, 110-114 Main, and McKee-Chapman, and that there was no evidence to support the trial court's award of 50% interest to Tony. Appellants further assert the trial court ordered the equal division based on "sweat equity" as to McKee-Chapman, but not as to 3302 Polk, even where there was no question of equal ownership of these properties. The findings referencing "sweat equity" relate only to 812 Main and 110-114 Main. The final judgment awards equal ownership to Tony and Aaron as to 812 Main, 110-114 Main, and McKee-Chapman, and awards 80% to Estate Land Company, 10% to Kamal Banani, and 10% to Tony. These percentages are set out in the deeds. The final judgment does not award Tony any sum of money or percentage interest based on the theory of "sweat equity." Rather, the percentages awarded to appellants and Tony for these properties were based on the language in the respective deeds. The deeds to both 812 Main and 110-114 Main reflect that, as tenants in common or cotenants, Aaron and Tony held undivided one-half interests in the properties. The deed as to 3302 Polk controlled the trial court's division of the proceeds from the sale of 3302 Polk. Thus, there is legally and factually-sufficient evidence to support the percentages of ownership and the distribution of proceeds after the sale of these properties.

We overrule appellants' issue ten.

Finally, in their eleventh issue, appellants challenge three findings of fact and conclusions of law, which provide as follows:

> *Finding of Fact 25*: There are no agreements, understandings, or competent evidence to alter the ownership interest of Tony for 812 Mai, 110-114 Main, McKee-Chapman, or Polk, as reflected in the 812 Main Deed, 110-114 Main Deed, McKee-Chapman Deed, and the

14

Polk Deed.

*Finding of Fact 27*:  The Court has exercised its authority to adjust all equities between Tony, Aaron, Kamal, and ELC in determining the ownership interests of the parties and Tony's right to receive his share of the net proceeds from the partition by sale as stated above.

*Finding of Fact 28*:  The Court is of the opinion that a fair and equitable division of the real estate, or any part thereof, in this lawsuit cannot be made and an order of sale should be made for cash under a private or public sale and the proceeds returned into court and divided among the persons entitled thereto, according to their respective interests.

Appellants do not assert any factual or legal argument with respect to these three findings of fact and conclusions of law that were not made and addressed in connection with issues five through eleven, which we have overruled.  Therefore, for those same reasons, we overrule appellants' issue eleven.

We affirm the judgment of the trial court.


/s/     John Donovan
        Justice



Panel consists of Justices Boyce, Jamison, and Donovan.

15