**Jay Warne CARTER, Jr., Appellant**

v.

**Erwin Lee HARVEY, Sr., Appellee**

**NO. 02-16-00153-CV**

Court of Appeals of Texas, Fort Worth.

DELIVERED: June 29, 2017

ATTORNEYS FOR APPELLANT: TIMOTHY E. MALONE, LESLIE L. HUNT & KYLE B. FONVILLE, DECKER JONES, P.C., FORT WORTH, TEXAS.

ATTORNEY FOR APPELLEE: THOMAS W. KEY, LEONARD, KEY & KEY, P.L.L.C.

PANEL: LIVINGSTON, C.J.; GABRIEL and SUDDERTH, JJ.

## OPINION

TERRIE LIVINGSTON, CHIEF JUSTICE

In this dispute related to a partition of real property, appellant Jay Warne Carter, Jr. appeals the trial court's order appointing a receiver and authorizing a public sale of the property, of which he owns a 1/8 fee simple interest. He argues that the trial court erred by granting summary judgment against his claim for an equitable adjustment and by concluding that the property was incapable of an in-kind partition as an alternative to the sale. He also contends that the trial court's order is void because appellee Erwin Lee Harvey, Sr. did not join a necessary party—Carter's son Matthew—to the partition suit. We

reject each of Carter's arguments, so we affirm the trial court's judgment.

### Background Facts

Carter owns a 1/8 fee simple interest in a parcel of real property in Wichita County. He acquired that interest in 1982 when his mother died. Harvey owns the remaining 7/8 fee simple interest. He bought it from some of Carter's relatives for $185,000 in September 2014. The property contains several longstanding buildings, and it once served as the location for Carter Wind Systems, Inc. (CWS), a wind turbine company whose shares were owned by Carter and several other individuals. CWS dissolved in 1994. Since then, the property has also been used (but not owned) by Carter Wind Energy, LLC (CWE), a company formed by Carter and his son in approximately 1991 that likewise manufactures and sells wind turbines.

CWE placed a turbine on the property, and the turbine provides electricity to the buildings. Neither Carter nor Harvey own the turbine; Matthew owns it. The turbine sits on a 160-foot-tall tower. The property has road access only toward the northern part of its western side. The trial court admitted the following photograph of the property at trial (with the outlined rectangular shape in the center of the photograph representing the property):

1 inch = 300 feet

PLAINTIFF'S
EXHIBIT
1

In October 2014, Harvey filed a petition for a partition of the real property.[1] He pled that the property was not susceptible to a partition in kind because it contained substantial improvements and "valuable industrial fixtures." He asked the trial court to appoint someone to sell the property. Carter answered with a general denial.

During discovery, Carter raised a claim for equitable adjustment. He argued that the improvements on the property (the buildings) had been constructed by CWS

1. *See* Tex. Prop. Code Ann. § 23.001 (West 2014).

and that although CWS had dissolved in 1994, he owned a 27.9526 percent interest in CWS upon dissolution and could therefore assert an equitable adjustment claim. In a response to a request for disclosure, Carter wrote,

> [Carter] claims a credit for improvements he made through a corporation. More specifically, the property has significant improvements consisting of a 20,000 sq. ft. manufacturing facility, a 1,800 sq. ft. outbuilding, and a 192 sq. ft. outbuilding. . . . The improvements were constructed by [CWS]. . . . CWS voluntarily dissolved in 1994. . . . [Carter] is entitled to a credit of 27.9526% of the improvements.

Harvey filed a motion for partial summary judgment with respect to Carter's claim for equitable adjustment. In the motion, Harvey contended that Carter could not raise an equitable adjustment claim based on CWS's improvements to the property because (1) Harvey was a bona fide purchaser for value without notice of the alleged claim for CWS's improvements, (2) the equitable claim for construction of improvements by CWS was a corporate claim that a Texas statute required to be brought within three years of CWS's dissolution, (3) the claim was barred by the general four-year statute of limitations governing actions on a debt, and (4) laches barred the claim because Carter failed to notify Harvey of the claim during Harvey's purchase of his interest.

Carter responded to the motion. He contended that because CWS had distributed its assets to shareholders in 1994 and because he was one of the shareholders (and the largest one), he could bring an equitable adjustment claim for the value of improvements that CWS had contributed to the property. Carter also argued, in part, that Harvey had actual knowledge that he was not purchasing all the property and that a partition suit was likely and therefore could not assert his status as a bona fide purchaser, that limitations is not a defense to an equitable adjustment claim, and that laches could not bar the claim because he asserted the claim soon after Harvey filed the partition suit.

To his response, Carter attached evidence showing that he owned 27.9526 percent of CWS until its dissolution and that he had told Harvey of his claim for equitable adjustment before Harvey bought the property. He also attached CWS's articles of dissolution, which stated that he was the president of the corporation and that the corporation's assets had been "distributed to its shareholders in accordance with their respective rights and interests."

The trial court granted Harvey's motion for partial summary judgment against Carter's claim for equitable adjustment. The court found "that the claim in question [was] a corporate claim of [CWS] that was required to have been brought within three years of [CWS's] dissolution . . . [and] was not. The claim is barred by the statute of limitations."

Later, the trial court conducted a bench trial on the remaining issues related to Harvey's partition petition. The court heard testimony from Carter, Harvey, and Jim Henderson, a real estate appraiser. After considering the parties' evidence and the written arguments they presented after the trial, the trial court found that the property was not subject to a partition in-kind because such a partition "would impair significantly the value of the tract [of land]." Thus, the court's judgment[2] or-

---

2. A partition case, unlike other proceedings, has two final judgments, and the first one, which determines the susceptibility of the property to partition among other preliminary matters, is appealable as a final judgment. *Griffin v. Wolfe*, 610 S.W.2d 466, 466 (Tex.

dered the property to be publicly sold and for the net proceeds to be divided between Harvey and Carter in accordance with their respective interests. The court also appointed a realtor as a receiver to execute the sale. The court described the turbine as a removable trade fixture and stated that Carter had not pled a claim for equitable adjustment concerning the turbine.[3]

In a motion for new trial, Carter argued that the trial court had erred by "summarily dismissing his claims for equitable adjustment and by ordering a partition [of] sale." He also contended for the first time that the trial court's judgment was rendered without jurisdiction because Harvey had failed to join Matthew as a necessary party. He argued that Matthew owned the wind turbine that was affixed to the property, that it would cost $75,000 to remove the wind turbine, that complete and just relief could not be given in Matthew's absence, and that Matthew should have therefore been made a party. The motion for new trial was overruled by operation of law,[4] and Carter brought this appeal.

### Equitable Adjustment Claim

In Carter's first issue, he contends that the trial court erred by granting summary judgment against his claim for an equitable adjustment. We review a summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). We consider the evidence presented in the light most favorable to the nonmovant,

crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008). A defendant is entitled to summary judgment on an affirmative defense if the defendant conclusively proves all the elements of the affirmative defense. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508–09 (Tex. 2010), *cert. denied*, 562 U.S. 1180, 131 S.Ct. 1017, 178 L.Ed.2d 829 (2011); *see* Tex. R. Civ. P. 166a(b), (c).

In a partition suit, a trial court may determine the value of improvements as to provide for the adjustment of equities between the parties. *See* Tex. R. Civ. P. 760; *Snow v. Donelson*, 242 S.W.3d 570, 572 (Tex. App.—Waco 2007, no pet.); *Yturria v. Kimbro*, 921 S.W.2d 338, 342 (Tex. App.—Corpus Christi 1996, no writ) ("[P]roof is made to the factfinder at trial of the existence and value of improvements to the property at the time of partition and of other equitable considerations which may warrant awarding a particular portion of the property to one of the parties."). Harvey has never contested this principle. Instead, in the trial court, he argued that Carter could not claim an equitable adjustment based on improvements made by CWS. More specifically, Harvey argued that "the claim in question, if it exists,

---

1980); *Bolinger v. Williams*, No. 07-14-00024-CV, 2015 WL 9473924, at *2 (Tex. App.—Amarillo Dec. 21, 2015, no pet.) (mem. op.). Thus, we reject Harvey's argument that this appeal is interlocutory or accelerated, and we conclude that Carter's notice of appeal, which he filed thirty days after the trial court's judgment, was timely. *See Trimble v. Luminant Mining Co.*, No. 06-15-00004-CV, 2016 WL 234483, at *2 (Tex. App.—Texarkana Jan. 20,

2016, no pet.) (mem. op.) ("An appeal from matters ruled on in the first judgment must be filed within thirty days of that first judgment. . . .").

**3.** Carter does not challenge these parts of the trial court's judgment in this appeal.

**4.** *See* Tex. R. Civ. P. 329b(c).

belongs to [CWS], rather than to its stockholders, and, because the corporation was dissolved more than three years ago, any action to enforce such claim is barred as a matter of law."

In presenting this argument, Harvey relied on section 11.356 of the business organizations code, which states,

(a) Notwithstanding the termination of a domestic filing entity under this chapter, the terminated filing entity continues in existence *until the third anniversary of the effective date of the entity's termination only* for purposes of:

(1) *prosecuting or defending in the terminated filing entity's name an action or proceeding brought by or against the terminated entity*;

(2) permitting the survival of an existing claim by or against the terminated filing entity;

(3) holding title to and liquidating property that remained with the terminated filing entity at the time of termination or property that is collected by the terminated filing entity after termination;

(4) applying or distributing property, or its proceeds, as provided by Section 11.053; and

(5) settling affairs not completed before termination.

Tex. Bus. Orgs. Code Ann. § 11.356(a) (West 2012) (emphasis added); *see id.* § 11.359(a) (West 2012) ("[A]n existing claim by or against a terminated filing entity is extinguished unless an action or proceeding is brought on the claim not later than the third anniversary of the date of termination of the entity."); *Cohen Acquisition Corp. v. EEPB, P.C.*, No. 14-14-00330-CV, 2015 WL 2404869, at *2 (Tex.

App.—Houston [14th Dist.] May 19, 2015, pet. denied) (mem. op.) (applying section 11.356 and holding that a corporation's claims had been extinguished under that section). Harvey contended that under section 11.356, any equitable adjustment claim must have been brought by the corporation itself—as opposed to one of its stockholders—within three years of dissolution. The trial court granted summary judgment on that basis.

■ On appeal, Carter states that a dissolved corporation cannot assert a cause of action "in its own name more than three years after its dissolution. That is not disputed, and it is not an issue in this appeal. What is an issue is whether a corporation is precluded, as a matter of law, from assigning its cause of action to a third-party." Carter contends that CWS at one time had a right to assert a claim for equitable adjustment; that the right was legally assignable; and that upon dissolution, CWS assigned the right to him through a provision in the articles of dissolution.[5] He asserts that as a 27.9526 percent stockholder upon CWS's dissolution, he should be entitled to that percentage of the property's improved value as an equitable adjustment.

Our sister appellate court in Eastland recently considered how a Delaware corporate survival statute that is akin to the provisions of section 11.356 of the business organizations code impacted whether "actions that arise during the period of corporate existence ... survive past the windup period of the survival statute." *Regal Ware, Inc. v. CFJ Mfg.*, No. 11-13-00044-CV, 2015 WL 1004380, at *3 (Tex. App.—Eastland Feb. 27, 2015, no pet.) (mem. op.). There, Regal Ware had received an assignment of claims upon another corpo-

**5.** That provision states, "The remainder of the properties and assets of the corporation have been distributed to its shareholders in accordance with their respective rights and interests."

ration's dissolution and had attempted to maintain a cause of action based on alleged fraud perpetrated against the dissolved corporation. *Id.* at *1. In considering whether Regal Ware had standing to pursue that claim, the Eastland court first discussed the purpose of corporate survival statutes (such as section 11.356), stating. that such statutes extend "for a limited time the ability of a dissolved corporation to bring or defend suits—an ability that would have ended at its dissolution date but for the statute's extension." *Id.* at *2. The court then discussed whether Regal Ware, as an assignee of the dissolved corporation's assets, could pursue an action that inured during the period of the dissolved corporation's existence even after the expiration of the survival statute's three-year period. *See id.* at *3. In holding that Regal Ware could not maintain that action, the court explained,

> An examination of case law from other jurisdictions reveals that there are two types of actions that arise during the period of corporate existence but survive past the windup period of the survival statute: (1) those actions brought in an individual capacity for a personal wrong and (2) ascertainable or previously asserted claims that have the character of a tangible property asset and that have devolved by law or have been assigned to the shareholders. When a claim is held individually by a shareholder of a dissolved corporation, even if the claim arose from a corporate matter, the corporate survival statute is not applicable. *If, on the other hand, an action seeks to redress a wrong done to the corporation, or if the claim arose solely as a consequence of a corporate wrong, the claim is derivative in nature and will not survive past the windup period.*
>
> Regal Ware's action against CFJ was not an individual shareholder action but, rather, a claim sought to redress a

wrong done to [the dissolved corporation]. As such, the claims were personal to [the dissolved corporation] and clearly derivative to Regal Ware. Thus, the individual shareholder exception does not apply to Regal Ware's claims against CFJ.

> . . . .

> The second type of action that arises from the period of corporate existence but endures past the survival statute's windup period involves ascertainable or previously asserted. claims that have the character of a tangible property asset and that have devolved by law or have been assigned by the shareholders. Classes of assets that courts have held devolve to shareholders upon dissolution are primarily interests in either real or personal property, corporate claims asserted within the windup period, fixed liabilities, or liquidated debts.

> Courts in other jurisdictions have declined to extend this list of assets to include unasserted corporate contract claims. We find the reasoning in these cases to be persuasive.

> Unlike a note or mortgage, an unasserted cause of action based on a breach of contract claim is not a debt fixed in amount and evidenced by a document. Rather, an unasserted contract claim involves evidentiary problems and factual disputes. *We decline to recognize a property interest in such an undefined claim.*

> We conclude that the claims against CFJ did not devolve to Regal Ware. The claims were unasserted at the time of [the dissolved corporation's] dissolution, *and courts in other jurisdictions have consistently held that unasserted corporate claims do not fall within the property interest exception.* . . .

> . . . .

Regal Ware brought claims against CFJ that were personal to [the dissolved corporation] and were derivative to Regal Ware. [The dissolved corporation] failed to assert the claims while still in existence or within the time prescribed by the survival statute. Regal Ware then waited five years after the dissolution of [the dissolved corporation] to bring the claims. Given these facts, we hold that Regal Ware's claims against CFJ were barred by Delaware's corporate survival statute.

*Id.* at *3–5 (emphasis added) (citations omitted); *see also Williams v. Bd. of Educ. of City of Chicago*, 506 Fed.Appx. 517, 519–20 (7th Cir. 2013) (stating that under an Illinois corporate survival statute, after the expiration of the survival period, shareholders "might . . . be able to sue on corporate claims that have passed to them on dissolution, but inchoate claims are forfeited for a corporation and its shareholders alike unless the claims arise from a debt of an ascertainable and fixed amount, often as evidenced by a document"); *Hutson v. Fulgham Indus.*, 869 F.2d 1457, 1463–64 (11th Cir. 1989) (concluding that Alabama's corporate survival statute barred an unasserted fraud claim); *Nix v. W.R. Grace & Co.-Conn.*, 830 F.Supp. 601, 605 (S.D. Ala. 1993) ("A general assignment of claims by a corporation to its shareholders prior to the corporation's dissolution does not preserve unasserted claims past the statutory wind-up period. To hold otherwise would be completely contrary to the purpose of corporate survival statutes."); *Davis v. St. Paul Fire & Marine Ins. Co.*, 727 F.Supp. 549, 552 (D.S.D. 1989) (holding that South Dakota's corporate survival statute barred a derivative, unasserted, unfixed breach of contract claim brought by a shareholder); *MBC, Inc. v. Engel*, 119 N.H. 8, 397 A.2d 636, 639 (1979) ("We will not permit the corporation continuance statute to be circum-

vented by allowing former shareholders to assert expired rights of a defunct corporation after the statutory period has elapsed. The expired right is no more enforceable in the former shareholders' possession than it is in the defunct corporation's.").

In accordance with the court's holding in *Regal Ware*, in *Alsheikh v. Altawil*, while discussing the provisions of the statutory predecessor to section 11.356, we explained that a "shareholder does not have standing to bring a derivative claim that the corporation can no longer bring." No. 02-12-00178-CV, 2015 WL 392220, at *4 (Tex. App.—Fort Worth Jan. 29, 2015, no pet.) (mem. op.). Our statement in *Alsheikh* flows from the rule that an individual shareholder ordinarily has no individual cause of action for a wrong done to the corporation but that a derivative suit allows a shareholder to "step into the shoes of a corporation" and sue on its behalf. *See Tran v. Hoang*, 481 S.W.3d 313, 316 (Tex. App.—Houston [1st Dist.] 2015, pet. denied); *see also Mossler v. Nouri*, No. 03-08-00476-CV, 2010 WL 2133940, at *6 (Tex. App.—Austin May 27, 2010, pet. denied) (mem. op.) (explaining that one type of derivative suit is when a shareholder prosecutes "proceedings to protect the shareholder's beneficial interest in corporate assets when a corporation is barred from bringing suit"). More generally, the assignee of a cause of action "stands in the shoes of the assignor and may assert those rights that the assignor could assert." *Rolen v. LVNV Funding, LLC*, No. 02-09-00304-CV, 2010 WL 1633402, at *2 (Tex. App.—Fort Worth Apr. 22, 2010, no pet.) (mem. op.) (citing *Gulf Ins. Co. v. Burns Motors, Inc.*, 22 S.W.3d 417, 420 (Tex. 2000)); *see Sw. Bell Tel. Co. v. Mktg. on Hold Inc.*, 308 S.W.3d 909, 916 (Tex. 2010) (stating that an assignee "is considered under the law to have suffered the same injury as the [assignor] and [has] the same

ability to pursue the claims"); *Equitable Recovery, L.P. v. Heath Ins. Brokers of Tex., L.P.*, 235 S.W.3d 376, 387 (Tex. App.—Dallas 2007, pet. dism'd) ("Assignees stand in the shoes of their assignors and have no greater rights.").

These decisions persuade us to conclude that upon the expiration of the three-year period for winding up the prosecution of CWS's legal rights, *see* Tex. Bus. Orgs. Code Ann. § 11.356(a)(1), Carter lost the ability to pursue a claim for equitable adjustment.[6] CWS's right to equitable adjustment was an unfixed, unasserted, inchoate right at the time of CWS's dissolution. Carter's suit seeking to enforce the equitable adjustment is derivative (rather than direct) in that it rests on an injury to CWS related to the value of the improvements. *See Swank v. Cunningham*, 258 S.W.3d 647, 661 (Tex. App.—Eastland 2008, pet. denied) (explaining that a wrongful act that "depletes corporate assets and thereby injures shareholders only indirectly, by reason of the prior injury to the corporation, should be seen as derivative in character"); *Shirvanian v. DeFrates*, 161 S.W.3d 102, 110 (Tex. App.—Houston [14th Dist.] 2004, pet. denied) (op. on reh'g) (explaining that a shareholder's suit is direct when the shareholder demonstrates that the "duty breached was owed to the [shareholder] and that he or she can prevail without showing a corresponding injury to the corporation"). Because Carter derivatively stands in the shoes of CWS, he cannot bring an equitable adjustment claim that CWS could not bring. *See* Tex. Bus. Orgs. Code Ann. § 11.356(a); *Tran*, 481 S.W.3d at 316; *Alsheikh*; 2015 WL 392220, at *4. We hold that the trial court did not err by granting summary judgment against Carter's claim for an equitable adjustment, and we overrule Carter's first issue.

## Order for Partition by Sale

In his second issue, Carter contends that the trial court erred by ordering a sale of the property rather than partitioning the property in-kind. He argues that the "undisputed expert testimony proved that the property was . . . capable of partition in-kind." When a trial court decides that a fair and equitable division of real estate cannot be made, "it shall order a sale of so much as is incapable of partition, . . . and the proceeds thereof shall be returned into court and be partitioned among the persons entitled thereto, according to their respective interests." Tex. R. Civ. P. 770. It is "well established that Texas law favors partition-in-kind." *Daven Corp. v. Tarh E & P Holdings, L.P.*, 441 S.W.3d 770, 776 (Tex. App.—San Antonio 2014, pet. denied).

The threshold question in a partition suit is whether the property is "susceptible of partition" or "incapable of partition" because a "fair and equitable division" cannot be made. *See* Tex. R. Civ. P. 761, 770. The determination of whether an in-kind partition is fair and equitable includes whether the property can be divided in-kind without materially impairing its value. *Daven Corp.*, 441 S.W.3d at 777. The party seeking partition by sale bears the burden of proving a partition in-kind would not be fair and

---

6. Carter contends that equitable adjustment claims are not subject to statutes of limitation or that any statute of limitation begins to run only upon the filing of a petition for partition. But as the court in *Regal Ware* explained, corporate survival statutes are not statutes of limitations; rather, such statutes extend "for a limited time the ability of a dissolved corporation to bring or defend suits—an ability that would have ended at its dissolution date but for the statute's extension." 2015 WL 1004380, at *2; *see Gomez v. Pasadena Health Care Mgmt.*, 246 S.W.3d 306, 316 (Tex. App.—Houston [14th Dist.] 2008, no pet.).

equitable. *Champion v. Robinson*, 392 S.W.3d 118, 123 (Tex. App.—Texarkana 2012, pet. denied) (explaining that property may be "capable" of partition in a physical sense but still "incapable" of partition under rule 770); *see also Hopkins v. Hopkins*, No. 03-03-00629-CV, 2006 WL 1126222, at *8 (Tex. App.—Austin Apr. 27, 2006, pet. denied) (mem. op.) ("A party seeking partition by sale must show that partition in kind is impractical or unfair. A party is not required to show that partition in kind is physically impossible, but that partition by sale would best serve the parties' interest and restore or preserve the maximum value of the property." (citation omitted)); *Robertson v. Robertson*, 425 S.W.2d 707, 708 (Tex. Civ. App.—Houston [14th Dist.] 1968, no writ) ("Generally, where the evidence is conflicting[,] ... it is a question of fact for the jury or the trier of facts whether or not a partition in kind is feasible or a sale for division necessary.").

Carter challenges the legal and factual sufficiency of the evidence to establish that an in-kind partition would not have been fair and equitable. *See Daven Corp.*, 441 S.W.3d at 779 (evaluating the factual sufficiency of evidence in a partition case); *see also Dierschke v. Dierschke*, Nos. 03-15-00399-CV, 03-15-00400-CV, 2016 WL 690665, at *2 n.4 (Tex. App.—Austin Feb. 18, 2016, no pet.) (mem. op.) (explaining that a "trial court's determinations in a partition suit may be attacked for legal and factual sufficiency").

We may sustain a legal sufficiency challenge only when the record discloses a complete absence of evidence of a vital fact, the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, the evidence offered to prove a vital fact is no more than a mere scintilla, or the evidence establishes conclusively the opposite of a vital fact. *Ford Motor Co. v. Castillo*, 444 S.W.3d 616, 620 (Tex. 2014). In determining whether there is legally sufficient evidence to support the finding under review, we must consider evidence favorable to the finding if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not. *Cent. Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007); *City of Keller v. Wilson*, 168 S.W.3d 802, 807, 827 (Tex. 2005).

When reviewing an assertion that the evidence is factually insufficient to support a finding, we set aside the finding only if, after considering and weighing all of the evidence in the record pertinent to that finding, we determine that the credible evidence supporting the finding is so weak, or so contrary to the overwhelming weight of all the evidence, that the answer should be set aside and a new trial ordered. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986) (op. on reh'g); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965).

Carter contends that Harvey presented no evidence to rebut the presumption in favor of an in-kind partition and that no reasonable factfinder could have concluded that the property was incapable of partition in-kind. At trial, Jim Henderson, an independent real estate appraiser, was the only expert witness. Carter and Harvey also testified.

Henderson testified that he had been asked to inspect the property "to see if there was any way that it could be partitioned into a seven-eighth and one-eighth interest without damaging the property." As evidenced by the map above, Henderson described that near the midpoint between the northern and southern boundaries of the property, on the property's western side, it contained a driveway that led to several buildings. Henderson also explained that the driveway was con-

nected to a farm-to-market road on the property's western side but that less than half of that side had access to the road. The northern, southern, and eastern boundaries of the property do not have road access. Henderson testified, and the map included above shows, that the turbine sits near the center of the property, just northeast of the buildings. Henderson testified that the buildings had been vacant for many years and were in poor condition.

Henderson expressed his understanding that Carter desired an in-kind partition in which his 1/8 right to the property would include the part of the property containing the turbine. In accordance with Henderson's understanding, Carter presented the following exhibit at trial, which shows Carter's proposed in-kind division (with Carter receiving the outlined section of the property to the north, which contains the turbine and most of the road access, and Harvey receiving the outlined section of the property to the south, which contains the improvements and access to the driveway that leads to them):

© 2014 Google

With respect to Carter's desire to receive the part of the land containing the turbine, Henderson opined,

[I]f you include that land that's located under the wind generator, because of the way it's situated, the foundation it has, the wiring under it, and the location of it, I can't figure any practical way that you could add something to that to give it access without damaging [the combined value of] both tracts.

. . . .

. . . And in order to keep the land under the wind generator and figure out some way to give access to the land under the wind generator, because of the way the property is situated on FM369, I couldn't figure any way that it

could practically be done without messing up the whole deal.

....

... I looked at the entire package and was asked if I thought that the property could be partitioned into a seven-eighths, one-eighth including the location for the wind generator. In my opinion, there's no way to do that.

....

... [Y]ou've got to include at least enough land underneath that wind generator to get to it and to work on it, fix it, do whatever you need to do to the thing. So you're gonna have to have enough land in with that. I mean, you wouldn't want to have to have just the land around the base of the foundation, you're gonna have to have some additional land in order to service and get to that wind generator.

....

... [T]here's a lot of different ways to figure damages. But what I did, I looked at the entire tract, I looked at the value of the entire tract, I looked at the value of a one-eighth interest and the value of a seven-eighth interest, and based on those numbers, the one-eighth interest owner should get about $26,428 worth of property. So if you try to figure $26,400 worth of property and include the wind generator site, there's no practical way to do it without damaging the tract.

....

... If you try to partition out $26,000 worth of property and include the wind generator site, there's no way that you can allocate access, enough acres to make the $26,000 work without damaging both tracts.

....

... All I looked at was is it feasible to partition the tract into a one-eighth and a seven-eighth's interest including the wind generator and the smaller part, the $26,000 part. And there's no way to do it.

Henderson also testified that the highest values in the property related to the property's improvements and to the northern part of the property that had access to the road, was near a residential subdivision, and could be used for residential development. He explained that the southern half of the property had much less value because it had no road access. While Henderson acknowledged that an appraisal district had assigned approximately 80% of the property's value to its improvements (which may or may not have included the turbine), he stated, "[T]hat's what they did, but the land's worth more than that."

On cross-examination by Carter's counsel, Henderson testified that if the wind turbine was not located on the property, the property could be fairly divided in-kind. Finally, Henderson testified that Carter had not provided him with a proposal about how to partition the property in-kind.

Harvey testified that Carter had informed him that in his proposed partition of the property, he wanted to have the part of the property containing the turbine (which Carter's son Matthew owns), all of the acreage to the north of the turbine, and a small building located near the turbine. Given Carter's proposal, Harvey agreed with Henderson's assessment; he testified that the property "cannot be partitioned the way [Carter wants] it to be partitioned.... If they did that, it would hurt me greatly." Harvey agreed with Henderson that it was theoretically possible to partition the property in-kind, but he testified that it was not possible to do so under the proposal for Carter to have the part of the land that included the turbine (and the foundation on which the turbine rests).

With respect to whether the property could be partitioned in-kind if the turbine was not a factor, Harvey testified, "[T]he whole [reason] that we're here today is because of the [turbine], not because of the property." Harvey later testified that it was "[v]ery possible" for a fair and equitable in-kind partition to be made if the land surrounding the turbine was not a part of the partition. Harvey described the southern part of the property as a "big ditch" and "terrible"; he stated that development on the southern part of the property would require a significant financial expense.

Carter testified that he helped run CWS on the property from 1976 to 1994. He explained that the main building on the property comprises more than 20,000 square feet and was built for building turbines but could be used for different types of businesses. According to Carter, that building contributed to approximately eighty percent of the land's value, so a fair partition could give Harvey the land that the building was located on and give Carter more than 1/8 of the remaining acreage—including the land surrounding the turbine—to compensate for the comparatively less value of that acreage. Referring to the map above that depicts his proposed in-kind division, Carter testified that a fair partition of the land could give him northern and western parts of the property that included the turbine and a small building and could give Harvey southern and eastern parts of the property that included the other improvements of which Carter believed contributed the greatest value to the property.

While Carter testified that the map above did not represent the only in-kind division he would accept, he stressed that he would have a "hard time" accepting any division in which he did not receive the land where the turbine stood. He then recognized that in one respect, his testimony was consistent with Harvey's and Henderson's: an in-kind partition that awarded him the land where the turbine stood might not be possible. When Harvey's counsel asked Carter whether he would be pleased if the trial court ordered an in-kind division but the division gave him property north of the turbine and not including the turbine, he said no. The following exchange then occurred between Harvey's counsel and Carter:

Q. It definitely wouldn't please you because you would not get the wind turbine. Correct?

A. That's correct.

Q. *So if the Court grants you the relief of dividing it in kind, but the commissioners don't give you the kind of division you like, you're still gonna be unhappy.*

A. *I agree. Yeah. I mean, this is a tough situation.* [Emphasis added.]

In rebuttal testimony, referring to Carter's proposed in-kind division depicted by the map above, Henderson testified that the division would not be fair and stated, "I can't believe he was serious." Henderson referred to Carter's proposal as "ludicrous," explaining that Carter, who had the much lesser interest, proposed to own the northern part of the property, which was more valuable because it had road access and was "near utilities in a residential subdivision." Concerning the southern part of the tract, Henderson stated, "It's mesquite land, it's got ditches, intermittent streams with no access. So it's worth significantly less if you partition it the way Mr. Carter suggested. I mean, it's—it's absolutely ridiculous."

On appeal, Carter contends that the trial court erred by ordering a sale of the property because Henderson's testimony proved that the property was theoretically capable of an in-kind partition. Carter emphasizes that Harvey "specifically asked

[Henderson] to **_only_** opine as to whether or not the [property] could be partitioned in-kind '**IF**' the [turbine] had to be included in [Carter's] 1/8ths share of the property." Carter relies on the fact that Henderson testified that partition was possible if the turbine was not included in Carter's portion. Finally, Carter argues that because Henderson "unequivocally conditioned his opinion on the inclusion of the [turbine] as a fixed improvement, the trial court's finding that it was removable renders the [testimony] entirely irrelevant."

We disagree. The evidence presented at trial created incongruous, competing concerns: Carter testified that he would not be satisfied with any in-kind partition in which he did not receive the part of the land containing the turbine, and Henderson testified that any partition in which Carter received that part would damage the combined value of both tracts. Under these unique circumstances, although the evidence showed that an in-kind partition was theoretically possible, we cannot conclude that the trial court erred by implicitly deciding that such a partition was not feasible, fair, practical, or equitable and therefore ordering a sale. *See* Tex. R. Civ. P. 770; *Champion*, 392 S.W.3d at 123; *Hopkins*, 2006 WL 1126222, at *8; *see also Williams v. Mai*, No. 01-11-00611-CV, 2012 WL 6644704, at *4 (Tex. App.—Houston [1st Dist.] Dec. 20, 2012, no pet.) (mem. op.) ("The rules of equity govern the trial court's partition of property."); *Irons v. Fort Worth Sand & Gravel Co.*, 284 S.W.2d 215, 219 (Tex. Civ. App.—Fort Worth 1955, writ ref'd n.r.e.) ("The practicalities control."). Although the law does not favor compelling an owner to sell property against his will, *see Rayson v. Johns*, 524 S.W.2d 380, 382 (Tex. Civ. App.—Texarkana 1975, writ ref'd n.r.e.), the trial court could have reasonably concluded from the evidence presented that any partition that would have preserved the value of both parties' tracts would have likewise been against Carter's will. As Harvey contends, Carter's proposal to partition the property, which Henderson and Harvey rejected as unfair and inequitable, served to support the trial court's decision that the property was not susceptible to partition in-kind.

Carter appears to propose on appeal that in light of the trial court's finding that the turbine is a removable trade fixture (as opposed to a permanent improvement), he would view an in-kind partition as equitable and just even if the partition did not give him the part of the tract where the turbine currently stands. He argues that if the turbine is not permanently attached to the property, it should not be considered when analyzing whether the land can be partitioned in-kind. But Carter did not testify in the trial court that he would be amenable to or interested in any in-kind partition in which he did not receive the land and foundation on which the turbine currently rests. Rather, Henderson aligned his expert opinion with Carter's conceded focus—retaining the part of the land upon which the turbine stood. The evidence indicates that moving the turbine and reconnecting it to an electrical system will cost well over $75,000.

For these reasons, under the distinct circumstances presented here, we conclude that the trial court, being in the best position to determine the equities between the parties, had sufficient evidence from which it could decide that the interests of both parties would be best served by selling the property and dividing the proceeds. *Cf. Halamka v. Halamka*, 799 S.W.2d 351, 354 (Tex. App.—Texarkana 1990, no writ) ("[T]he trial court, being in the best position to determine the equities between the parties, had sufficient evidence from which it could determine that the interests of

both parties would be best served by selling the property and dividing the proceeds."). The trial court could have rationally determined under these facts that any workable, practical in-kind partition would not have served either party's desire or best interest.

We hold that the evidence is legally and factually sufficient to support the trial court's judgment ordering a sale of the property. *See Ford Motor Co.*, 444 S.W.3d at 620; *Pool*, 715 S.W.2d at 635; *Cain*, 709 S.W.2d at 176. We overrule Carter's second issue.

### Necessary Parties to Partition Suit

■ In Carter's third issue, he contends that the trial court erred by ordering a sale of the property without ensuring that Matthew, who owns the turbine, was joined as a party. Carter relies on rule of civil procedure 39(a) to assert that Matthew should have been joined because the trial court's judgment affected his interest in the turbine. *See* Tex. R. Civ. P. 39(a). Carter argues that because Matthew was a necessary party and was not joined, the trial court lacked jurisdiction, and its judgment is void. Harvey asserts that because Matthew does not own any interest in the real property but owns only the turbine, he is not a necessary party to the partition suit. We agree with Harvey.

Texas courts have repeatedly and consistently held that only parties with possessory interests in real property are necessary parties to partition suits. *In re Estate of Kubela*, No. 04-02-00089-CV, 2002 WL 31867830, at *2 (Tex. App.—San Antonio Dec. 24, 2002, no pet.) (not designated for publication) ("Partition merely segregates the rights of owners."); *Dierschke v. Cent. Nat'l Branch of First Nat'l Bank at Lubbock*, 876 S.W.2d 377, 380 (Tex. App.—Austin 1994, no writ) ("[A]n owner of a nonpossessory interest

can neither compel nor defeat partition and is not a necessary party to a partition suit because [his] title is not affected by partition."); *Tex. Oil & Gas Corp. v. Ostrom*, 638 S.W.2d 231, 233 (Tex. App.—Tyler 1982, writ ref'd n.r.e.) (applying rule 39(a) and concluding that lessors and royalty interest holders, each of whom held nonpossessory interests that could be affected by a judgment in a partition suit, were not necessary parties in the suit); *Outlaw v. Bowen*, 285 S.W.2d 280, 284 (Tex. Civ. App.—Amarillo 1955, writ ref'd n.r.e.) ("Parties who own no interest in the property involved in a partition suit should not be made parties to the suit."); *Douglas v. Butcher*, 272 S.W.2d 553, 555 (Tex. Civ. App.—San Antonio 1954, writ ref'd n.r.e.) (stating that "partition operates upon possessory rights" and concluding that the owner of a *nonpossessory* royalty interest need not be made a party to a partition suit). The decisions in these cases align with rules of civil procedure that indicate which parties should be joined to partition suits and the limited subject matter of such suits. *See* Tex. R. Civ. P. 756(a) (stating that the plaintiff's petition in a partition suit must state the names of each of the "joint owners, or joint claimants, of such property"); 757 (stating that citation must be issued for each of the joint owners or joint claimants of the property), 760 ("Upon the hearing of the cause, the court shall determine the share or interest of each of the joint owners or claimants *in the real estate sought to be divided*, and all questions of law or equity *affecting the title to such land which may arise*." (emphasis added)).

Based on this authority, although it is possible that Matthew's interest in the turbine may be affected by this partition suit, we reject Carter's assertion that Matthew

was a necessary party.[7] *See* Tex. R. Civ. P. 756, 757; *Dierschke*, 876 S.W.2d at 380. We overrule Carter's third issue.

### Conclusion

Having overruled each of Carter's three issues, we affirm the trial court's judgment.

GABRIEL, J., filed a dissenting and concurring opinion.

LEE GABRIEL JUSTICE, dissenting and concurring.

I agree with much of the majority opinion. I agree that appellant Jay Warne Carter Jr. cannot bring a derivative equitable-adjustment claim because the claim belonged to a dissolved corporation; therefore, the trial court did not err by granting partial summary judgment in favor of appellee Erwin Lee Harvey Sr. I also agree that Matthew Carter, Carter's son and the owner of the removable turbine located on the real property at issue in this appeal, is not a necessary party to Harvey's partition suit because Matthew has no possessory interest in the real property. Accordingly, I agree with the majority that the trial court's order for partition by sale is not void, as asserted by Carter, based on the absence of a necessary party. And although I agree with the majority that this case presents "unique" and "distinct circumstances," I believe that the evidence— even though unique and distinct—was legally insufficient to support the trial court's finding that the property was "not susceptible to a fair and equitable partition in kind because to do so would impair significantly the value of the tract of land."

The majority carefully and fully sets out the relevant facts and the applicable law, which I need not repeat except to highlight the bases of my respectful disagreement. Of course, Harvey had the burden to overcome the law's preference for partition in kind by showing that a partition in kind would be unfair and inequitable. *See Champion v. Robinson*, 392 S.W.3d 118, 123 (Tex. App.—Texarkana 2012, pet. denied); *see also* Tex. R. Civ. P. 770. Part of that showing includes whether the property can be divided in kind without materially impairing its value. *See Cecola v. Ruley*, 12 S.W.3d 848, 855 (Tex. App.—Texarkana 2000, no pet.) (op. on reh'g). The classic example of this tenet is a Persian rug: the rug's value is destroyed if the rug is cut in half, which renders partition in kind unfair and inequitable. *See id.*

The only evidence before the trial court here showed that the tract was susceptible to a partition in kind. Harvey's expert, Jim Henderson, testified that he only considered whether Carter's desired partition— his partitioned 1/8 interest of the 49-acre tract would include the location of the turbine—was feasible and that this desired partition was not feasible because of the need for access to the land under the turbine. In short, because of the turbine's location relative to the access road, Henderson concluded that there was no way to partition the tract in kind such that Carter's 1/8 interest—valued at $26,428— included that portion where the turbine was located. But Henderson testified that if the location of the turbine was not considered, a partition in kind of the property between the two owners was possible. And although Carter testified that it would be "hard" for him to "take the wind turbine

---

7. Carter argues that because Matthew was not joined to the partition suit, he has been deprived of an "opportunity to be heard" regarding his interest in the turbine. We note, however, that the record establishes that Mat-

thew (along with Carter) has sued Harvey in a separate suit. Carter represents on appeal that this separate suit "deals specifically with the same parties, same transactions, and same events as those discussed in this proceeding."

out of the picture," he would accept other in-kind partitions.

The majority recognizes this testimony but concludes that the trial court could have reasonably determined a partition in kind would be unfair and inequitable based on the parties' "incongruous, competing concerns"—Carter "would not be satisfied" unless he received his proposed partition, while Henderson and Harvey rejected Carter's proposed in-kind partition as unfair and inequitable. This holding would seem to allow any party to a partition suit to thwart a request for a partition in kind by refusing to budge from a proposed, yet unworkable, partition (as did Carter) or by opining that the proposed partition—and only the proposed partition—would impair the property's value (as did Harvey). But Carter's proposed partition does not begin and end the factual question to be determined by the trial court: whether the tract is susceptible to partition in kind. *See* Tex. R. Civ. P. 761. The trial court is not tasked with determining a specific and appropriate partition; that is the job of the appointed commissioners and, if appointed, the surveyor. *See* Tex. R. Civ. P. 761, 764, 768–69; *Yturria v. Kimbro*, 921 S.W.2d 338, 343 (Tex. App.—Corpus Christi 1996, no writ) ("The commissioners, rather than the trial court or jury, have been entrusted with the authority and the duty of actually dividing the land according to the value of the respective shares."). The trial court merely determines whether a partition in kind is feasible, fair, and equitable. *See* Tex. R. Civ. P. 761; *Yturria*, 921 S.W.2d at 341–42. Indeed, Carter could not seek a partition in kind of only a portion of the tract; the entire 49-acre tract was subject to the trial court's susceptibility determination. *See Battle v. John*, 49 Tex. 202, 210 (1878). A party's request to be allotted a described portion of the tract does not confine either the trial court's equitable determination to that specific request or the commissioners' in-kind partition report if such a partition is ordered. *See* 57 Tex. Jur. 3d *Partition* §§ 28, 59 (2016); *see also Yturria*, 921 S.W.2d at 342 ("[T]he existence and value of improvements is a question for the factfinder, while the exact manner of valuing the real property on which they are situated and dividing that property into shares among the parties is accomplished by the commissioners."). It follows, then, that to overcome the preference for in-kind partition, Harvey had to show that any partition in kind of the 49-acre tract would be inequitable or unfair because any partition would impair the entire tract's value. *Cf.* 57 Tex. Jur. 3d *Partition* § 61 ("Although the court may determine that each of two claimants is entitled to one-half of the land, the commissioners have the ... duty[ ] to divide the land according to the value of the respective shares.").

This he did not do. Carter, Harvey, and Henderson all agreed that a partition in kind of the tract was possible, and none testified that a partition other than Carter's proposal would impair the tract's value.[1] They disagreed on the feasibility of Carter's proposed partition in kind, not on whether the tract was "susceptible of partition" at all. Tex. R. Civ. P. 761. Henderson and Harvey testified regarding the effects of access rights to the tract's value if the tract were partitioned in kind as Carter requested, both concluding that its value would be impaired. Henderson stated that the northern portion of the tract was worth more because it has access to the road, while the southern portion was less valuable because it does not have ac-

---

1. In fact, Henderson seemed to agree that a partition in kind that would "take something off of the very north end that was equivalent to ... a one-eighth interest" could maintain the tract's value regardless of the location of the turbine.

cess, which Carter agreed with. But access rights do not affect a tract's susceptibility to partition in kind; easements causing the least amount of damage to the tract must be granted by the appointed commissioners to provide "reasonable ingress and egress ... through a public road or an existing easement appurtenant to the tract." Tex. Prop. Code Ann. § 23.006(a), (c) (West 2014). Accordingly, I disagree with the majority's apparent consideration of access rights in its review of the trial court's susceptibility determination. *See Champion*, 392 S.W.3d at 124 ("[T]he fact that the property has only a single road does not require a conclusion that the tract is incapable of partition."). I also disagree with the majority's apparent inclusion in its analysis of the cost to remove the turbine. Neither Carter nor Harvey owned the turbine or would have to bear any portion of the cost for its removal; thus, the cost to remove the turbine was not an equitable consideration affecting the tract's value.

While I recognize that the susceptibility of a tract to in-kind partition is a question of fact for, in this case, the trial court, our natural deference to a trial court's factual finding cannot arise if there are no facts to support it or if the opposite is conclusively established. *See Daven Corp. v. Tarh E & P Holdings, L.P.*, 441 S.W.3d 770, 777 (Tex. App.—San Antonio 2014, pet. denied); *Champion*, 392 S.W.3d at 123. Here, no evidence established that the tract was not susceptible to in-kind partition because a partition would impair the tract's value. And this is not a case where the tract's size is unusual, the ownership pool is so numerous, or the interests are so fractional that a partition in kind would be logistically impossible or not feasible. *See, e.g., Champion*, 392 S.W.3d at 124. Although much evidence established that Carter's proposed partition was not feasible and would impair the value of the tract, that

was not the question the trial court was to answer. The trial court was to determine susceptibility to partition in kind, not the feasibility of Carter's best-case partition scenario. *Compare* 57 Tex. Jur. 3d *Partition* §§ 51–52 (delineating susceptibility considerations, including the size of the property, the fractional interests at issue, and "[s]ubstantial economic loss"), *with id.* § 61 (recognizing commissioners determine allotment of specific property to fractional owners based on equality of value).

The admitted evidence reveals that Harvey did not meet his burden of proof to show that the tract was not susceptible to a partition in kind because it would be unfair and inequitable. *Cf. Cecola*, 12 S.W.3d at 854 (concluding evidence legally sufficient to support in-kind partition where evidence showed partition was possible, land could be divided into tracts, and record did not establish nonsusceptibility as a matter of law); *Horrocks v. Horrocks*, 608 S.W.2d 733, 735 (Tex. Civ. App.—Dallas 1980, no writ) ("Unless [the party with the burden of proof] met this burden, the [parties without the burden of proof] were entitled to a summary judgment recognizing such title and to a partition of the contested property."). Accordingly, I would conclude that the evidence was legally insufficient to support the trial court's finding that the tract was not susceptible to an in-kind partition because no evidence supports such a finding. In short, I believe that the unique, distinct, and undisputed evidence admitted before the trial court compelled a finding of susceptibility to partition and the entry of a decree directing the partition in kind of the tract based on Carter's 1/8 share and Harvey's 7/8 share. *See* Tex. R. Civ. P. 761. Because the majority does not, I respectfully dissent to this portion of the majority.